[No. S094597. Aug. 14, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
PHIA LEE et al., Defendants and Appellants.

## COUNSEL

Alisa M. Weisman, under appointment by the Supreme Court, for Defendant and Appellant Phia Lee.

Stephen Greenberg, under appointment by the Supreme Court, for Defendant and Appellant Johnson Xiong.

Bill Lockyer, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Chief Assistant Attorney General, Mary Jo Graves, Acting Assistant Attorney General, John G. McLean, Harry Joseph Colombo and Timothy L. Rieger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Subdivision (a) of section 664 of the Penal Code (section 664(a))[1] provides that, as a general matter, a person guilty of attempted murder must be punished by imprisonment for five, seven, or nine years. It goes on to provide, however, that, "if the [murder] attempted is willful, deliberate, and premeditated . . . , the person guilty of that attempt shall be punished by imprisonment . . . for life . . . . The additional term provided . . . for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

In *People v. Bright* (1996) 12 Cal.4th 652, 655–657 [49 Cal.Rptr.2d 732, 909 P.2d 1354], we considered the proper characterization of section 664(a), and held that the statute does not create a greater degree of attempted murder, but rather constitutes a penalty provision increasing the punishment for attempted murder beyond the maximum otherwise prescribed, when the murder attempted was willful, deliberate, and premeditated.

We granted review in the present case limited to two issues entirely distinct from the question in *Bright*. The first issue involves the proper interpretation of section 664(a): Does section 664(a) require that an attempted murderer *personally* acted willfully and with deliberation and premeditation if he or she is guilty as an aider and abettor? The second issue follows from the first: If section 664(a) in fact so requires, what is the standard of prejudice for a trial court's failure to instruct the jury to determine whether such an attempted murderer so acted?

As we shall explain, we conclude that section 664(a) properly must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor.

Because we conclude section 664(a), properly interpreted, does not require *personal* willfulness, deliberation, and premeditation on the part of an

---

[1] All unspecified section references are to the Penal Code.

attempted murderer, we do not address the standard of prejudice applicable to the trial court's omission of an instruction to the contrary.

In light of the foregoing, we conclude that the judgment of the Court of Appeal should be affirmed. Although the appellate court held that section 664(a) requires the personal willfulness, deliberation, and premeditation of the attempted murderer who is guilty as an aider and abettor, and further held that the trial court erred by failing to instruct the jury to make the requisite determination, it went on to hold that the error was harmless under either the reasonable-probability test of *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] (*Watson*) or the harmless-beyond-a-reasonable-doubt test of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*). The appellate court's interpretation of section 664(a) was erroneous, but because it found harmless the trial court's instructional omission, it nevertheless reached the correct result in upholding defendants' convictions and sentences. Accordingly, we shall affirm the judgment of the Court of Appeal.

## I

This case arises from violent confrontations in the City of Fresno in 1995 between rival Hmong gangs, the Men or Menace of Destruction (MOD) and the Unstoppable or Unseen Criminals (USC).

Defendants Phia Lee and Johnson Xiong, who were MOD members or associates and were 14 and 15 years of age, respectively, were charged with two counts of murder and seven counts of attempted murder. It was alleged that the murders were committed under the multiple-murder special circumstance. It also was alleged that each attempted murder was willful, deliberate, and premeditated for purposes of section 664(a).[2] Finally, it was alleged as to each murder that each defendant personally used a firearm, and it was alleged as to each attempted murder that each defendant personally used a firearm and personally inflicted great bodily injury.

Trial was by jury. The central contested issue was identity, with the People asserting, and defendants denying, that defendants took part in the charged murders and attempted murders. Viewed in the light most favorable to the ensuing judgment, the evidence discloses the following circumstances:

On the evening of April 29, 1995, three persons approached 989 Burns Street in Fresno, at least two of them arriving at the scene armed. They

---

[2] At the time of the crimes in question, section 664(a) differed somewhat from the statute as presently worded, but not substantially. See footnote 3 on page 621, *post*.

encountered Kou H., who was 15 years of age, Cheng H. and Thanaka T., who were 14, and Sa H., who was 13. Kou, Cheng, and Sa were brothers; Thanaka was a friend. The oldest and most muscular of the three persons in question, who never was identified and was referred to only as the "big guy," asked Thanaka whether he had any marijuana. Thanaka said he did not. Suddenly, the big guy pulled out a gun and started firing. One or both of his two companions did the same. In fleeing, the three persons left Kou, Cheng, Sa, and Thanaka wounded, Cheng and Sa most seriously—the former paralyzed from the waist down, the latter with injuries that resulted in the loss of a kidney and other internal organs. Earlier that same day, defendants had attempted to challenge Kou, Cheng, Sa, and Thanaka, apparently because Kou, Cheng, and Sa had a cousin who may have been associated with USC. The evidence was relatively clear that defendant Xiong was one of the perpetrators of the shootings, but was much less clear as to defendant Lee.

Less than two months later, on the evening of June 21, 1995, two persons approached an apartment complex located at 232 North Valeria Street in Fresno, both of them armed. One of the residents of the complex was Thong Vang, a founder of USC. The complex itself was marked as USC "turf." Without warning, each of the two persons in question trained his gun at various individuals, opened fire, and then fled, with one shouting "MOD, fool" in order to claim responsibility. In their barrage, the pair hit 20-year-old Quang Minh Ha, 17-year-old Doua V., and 5- or 6-year-old Linda V., each of whom survived the attack. The pair also hit 14-year-old Blong Xiong and 7-year-old Sandy Vang, who died of their wounds. Extensive evidence in the form of admissions and eyewitness testimony identified defendants as the perpetrators.

On motion of the People, the trial court dismissed the allegations of personal infliction of great bodily injury related to the charges of attempted murder, because the evidence was insufficient to prove which of the defendants inflicted injury on which of the victims.

The trial court then instructed the jury on, among other things, murder of both the first and the second degree; the multiple-murder special circumstance; attempted murder; willfulness, deliberation, and premeditation as to attempted murder for purposes of section 664(a); personal use of a firearm; and the liability of direct perpetrators and aiders and abettors as principals in a crime. The instructions included the following: "In order to prove the crime of attempted murder each of the following elements must be proved[:] [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored . . . a specific intent to kill . . . ." "If you find a defendant guilty of attempt to commit murder, you must further determine whether the attempt to commit

murder was willful, deliberate, and premeditated. [¶] 'Willful' means intentional. 'Deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. 'Premeditated' means considered beforehand." "Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." "A person aids and abets the commission of a crime when he or she, [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, . . . [¶] 3. By act or advice aids, promotes, encourages or instigates the commission of the crime."

The jury found defendant Lee guilty of the murder of Blong Xiong and Sandy Vang in the first degree, with a true finding as to the multiple-murder special circumstance, with personal use of a firearm; it also found him guilty of the attempted murder of Quang Minh Ha, Doua V., and Linda V., with personal use of a firearm, and found that each attempted murder was willful, deliberate, and premeditated for purposes of section 664(a); and it found defendant Lee not guilty of the attempted murder of Kou H., Cheng H., Sa H., and Thanaka T.

The jury found defendant Xiong guilty of both of the murders in the first degree, with a true finding as to the multiple-murder special circumstance, with personal use of a firearm; it also found him guilty of all of the attempted murders, with personal use of a firearm, and found that each attempted murder was willful, deliberate, and premeditated for purposes of section 664(a).

The trial court rendered judgment against defendants accordingly (the death penalty was not available on the findings of special circumstances because defendants were under 18 years of age; see § 190.5, subd. (a)), including imposition of life imprisonment for each attempted murder found to have been willful, deliberate, and premeditated for purposes of section 664(a).

The Court of Appeal affirmed the judgment, as modified to reduce defendants' convictions for the attempted murder of Linda V. (because of insufficient evidence) to assault with a deadly weapon. The appellate court first concluded that section 664(a) requires personal willfulness, deliberation, and premeditation on the part of an attempted murderer who is guilty as an aider and abettor. On this point, the appellate court declined to follow the contrary decision in *People v. Laster* (1997) 52 Cal.App.4th 1450 [61 Cal.Rptr.2d 680].

As a result, the appellate court concluded that the trial court erred by failing to instruct the jury to determine personal willfulness, deliberation, and premeditation in the case of an aider and abettor. The appellate court, however, went on to conclude that the trial court's error was subject to harmless error analysis, evidently as a violation only of California law and not the United States Constitution, and that the error in fact was harmless under the *Watson* reasonable-probability test—and harmless even under the *Chapman* harmless-beyond-a-reasonable-doubt test.

Defendants filed separate petitions for review. We granted review and limited the issues to (1) whether section 664(a) requires personal willfulness, deliberation, and premeditation on the part of an attempted murderer who is guilty as an aider and abettor, and (2) if so, what is the standard of prejudice applicable to a trial court's failure to instruct the jury to make the requisite determination.

## II

We begin with the issue whether section 664(a) requires that in order to be punished with life imprisonment for attempted murder as an aider and abettor, an individual must personally act with willfulness, deliberation, and premeditation.

In *People v. Bright, supra,* 12 Cal.4th 652, the question that we addressed was whether, for purposes of the double jeopardy clauses of the Fifth Amendment of the United States Constitution and section 15 of article I of the California Constitution, section 664(a), by providing for life imprisonment as the punishment for an attempted murderer when the murder attempted was willful, deliberate, and premeditated, creates a "greater degree of attempted murder" in the form of " 'first degree attempted murder' " or, instead, constitutes a "penalty provision" increasing punishment for attempted murder beyond the maximum otherwise prescribed. (*People v. Bright, supra,* 12 Cal.4th at p. 656, italics omitted.)

After carefully analyzing the language and purpose of section 664(a), we concluded in *Bright* that section 664(a) in fact constitutes a penalty provision increasing the punishment for attempted murder beyond the maximum otherwise prescribed, and does not create a greater degree of attempted murder. We further concluded that a jury verdict finding the defendant guilty of attempted murder, without any finding on an allegation that the murder attempted was willful, deliberate, and premeditated, did not amount to an acquittal of a so-called, but nonexistent, greater degree of attempted murder, and therefore concluded that the double jeopardy clauses of the federal and state Constitutions did not bar retrial on the allegation in question. (*People v. Bright, supra,* 12 Cal.4th at pp. 656–657.)

The issue before us here is entirely distinct from that in *Bright*. Whereas in *Bright* we considered the proper characterization of section 664(a) as creating a greater degree of attempted murder or instead constituting a penalty provision, in the present case we consider the proper interpretation of section 664(a) as to the attempted murderers to whom it applies. In this regard, defendants contend that section 664(a) requires that an attempted murderer personally have acted with willfulness, deliberation, and premeditation if he or she is guilty as an aider and abettor, and that the trial court erred by failing to instruct the jury to make the requisite determination.     By contrast, the People assert that section 664(a) requires only that the murder attempted was willful, deliberate, and premeditated, but not that an attempted murderer personally have acted with willfulness, deliberation, and premeditation, even if he or she is guilty as an aider and abettor. The People thus contend that the trial court acted properly by instructing the jury as it did. As we shall explain, we agree with the People's interpretation of section 664(a).

Section 664(a) provides in its entirety: "If the crime attempted is punishable by imprisonment in the state prison, the person guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted. *However, if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole.* If the crime attempted is any other one in which the maximum sentence is life imprisonment or death, the person guilty of the attempt shall be punished by imprisonment in the state prison for five, seven, or nine years. *The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact.*" (Italics added.)[3]

To begin with, as a substantive matter section 664(a) requires only that the *murder attempted* was willful, deliberate, and premeditated for an attempted

---

[3] At the time of the crimes charged against defendants, the wording of section 664(a) was substantially similar to what it is today, providing in pertinent part as follows: "[I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole; provided, further, that if the crime attempted is any other one in which the maximum sentence is life imprisonment or death the person guilty of the attempt shall be punishable by imprisonment in the state prison for a term of five, seven, or nine years. The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (Stats. 1994, ch. 793, § 1, p. 3920.)

murderer to be punished with life imprisonment. To quote the language of section 664(a), "if the crime attempted is willful, deliberate, and premeditated murder . . . , the person guilty of that attempt shall be punished by imprisonment . . . for life . . . ." Thus, section 664(a) states *only* that the murder attempted must have been willful, deliberate, and premeditated, *not* that the attempted murderer *personally* must have acted willfully and with deliberation and premeditation. Put otherwise, section 664(a) states that if the murder attempted was willful, deliberate, and premeditated, any "person *guilty of that attempt*"—*not* confined to persons *who acted willfully and with deliberation and premeditation*—"shall be punished by imprisonment . . . for life." Of course, a person may be guilty of attempted murder or indeed of any crime, on varying bases and with varying mental states, depending, for example, on whether he or she was a direct perpetrator or an aider and abettor or even a conspirator.

■ Referring three times broadly and generally to "the person guilty" of attempted murder, section 664(a) not once distinguishes between an attempted murderer who is guilty as a direct perpetrator and an attempted murderer who is guilty as an aider and abettor, and not once requires of an attempted murderer personal willfulness, deliberation, and premeditation. Had the Legislature intended to draw a distinction between direct perpetrators and aiders and abettors, it certainly could have done so expressly. When the Legislature amended what is now section 664(a) into the form of a penalty provision (see Stats. 1986, ch. 519, § 2, p. 1859), it had before it a model distinguishing between direct perpetrators and aiders and abettors—section 190.2. (See *People v. Bright, supra,* 12 Cal.4th at p. 669, fn. 12; *id.* at pp. 678–680 (dis. opn. of Mosk, J.).) Section 190.2, which increased the punishment for murder from life imprisonment to either death or life imprisonment without possibility of parole when the murder was committed under one or more specified special circumstances, imposed a blanket requirement of intent to kill for aiders and abettors, but not for direct perpetrators. (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978) § 6, adding § 190.2.) If the Legislature had intended to distinguish between direct perpetrators and aiders and abettors in what is now section 664(a), it is reasonable to presume that, whether by following the model of section 190.2 or otherwise, it would have done so explicitly. Furthermore, had the Legislature intended to require personal willfulness, deliberation, and premeditation of an attempted murderer, here too it could have done so expressly—as it did when it added subdivision (e) to section 664 (section 664(e)): "If attempted murder is committed upon a peace officer or firefighter . . . , *and the person who commits the offense knows or reasonably should know that the victim is such a peace officer or firefighter engaged in the performance of his or her duties,* the person guilty of the attempt shall be punished by imprisonment . . . for life . . . ." In section 664(e), the Legislature required personal actual or

constructive knowledge. In section 664(a), by contrast, it did not require personal willfulness, deliberation, and premeditation.

■ Next, as a procedural matter, section 664(a) requires only that the *fact* that the *murder attempted* was willful, deliberate, and premeditated must be alleged, and either admitted or found true, for an attempted murderer to be punished with life imprisonment. Again, to quote the language of section 664(a), life imprisonment "shall not be imposed" for attempted murder "unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." Here too, section 664(a) does not state that the accusatory pleading must charge that the attempted murderer *personally* acted willfully and with deliberation and premeditation, but only that the pleading must charge that the murder attempted was willful, deliberate, and premeditated. In this provision as well, section 664(a) makes no distinction between an attempted murderer who is guilty as a direct perpetrator and an attempted murderer who is guilty as an aider and abettor, nor does it draw any distinction between an attempted murderer who personally acted with willfulness, deliberation, and premeditation and an attempted murderer who did not so act.

In opposition to the foregoing interpretation of section 664(a), defendants argue that the Legislature did not intend to punish with life imprisonment an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, because assertedly such an attempted murderer is insufficiently blameworthy to merit such a severe punishment. To imprison this type of attempted murderer for life, they contend, would run counter to the purpose of section 664(a), which is "to impose [increased] punishment for attempted murder proportionate to the culpability of the crime, when the murder that was attempted was willful, deliberate, and premeditated" (*People v. Bright, supra*, 12 Cal.4th at p. 669, fn. 12). We find this argument unpersuasive because, as will appear, it ignores the very substantial blameworthiness of even this sort of attempted murderer.

Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. (E.g., 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 53, pp. 262–263; see, e.g., *People v. Swain* (1996) 12 Cal.4th 593, 604–605 [49 Cal.Rptr.2d 390, 909 P.2d 994].) To be guilty of a crime as an aider and abettor, a person must "aid[] the [direct] perpetrator by acts or encourage[] him [or her] by words or gestures." (*People v. Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828]; accord, *People v. Gonzales* (1970) 4 Cal.App.3d 593, 600 [84 Cal.Rptr. 863]; see generally 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Introduction to Crimes, § 78, p. 124.) In addition, except under

the natural-and-probable-consequences doctrine (see, e.g., *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [108 Cal.Rptr.2d 188, 24 P.3d 1210]; see generally *People v. Prettyman* (1996) 14 Cal.4th 248, 260–263 [58 Cal.Rptr.2d 827, 926 P.2d 1013]), which is not implicated on the facts presented here, the person must give such aid or encouragement "with knowledge of the criminal purpose of the [direct] perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of," the crime in question. (*People v. Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]; accord, e.g., *People v. Prettyman, supra*, 14 Cal.4th at p. 259; *People v. Croy* (1985) 41 Cal.3d 1, 11–12 [221 Cal.Rptr. 592, 710 P.2d 392].) When the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person "must share the specific intent of the [direct] perpetrator," that is to say, the person must "know[] the full extent of the [direct] perpetrator's criminal purpose and [must] give[] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime." (*People v. Beeman, supra*, 35 Cal.3d at p. 560.) ■ Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill. (See *People v. McCoy, supra*, 25 Cal.4th at p. 1118.)

In light of the foregoing, we conclude that the Legislature reasonably could have determined that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, is sufficiently blameworthy to be punished with life imprisonment. Where, as in the present case, the natural-and-probable-consequences doctrine does not apply, such an attempted murderer necessarily acts willfully, that is with intent to kill. In addition, he or she also necessarily acts with a mental state at least approaching deliberation and premeditation—concepts that entail " ' "careful thought and weighing of considerations" ' " and " ' "preexisting reflection" ' " (*People v. Anderson* (1968) 70 Cal.2d 15, 26 [73 Cal. Rptr. 550, 447 P.2d 942]), as opposed to "mere unconsidered or rash impulse hastily executed" (*People v. Thomas* (1945) 25 Cal.2d 880, 901 [156 P.2d 7])—because he or she necessarily acts with knowledge of the direct perpetrator's intent to kill and with a purpose of facilitating the direct perpetrator's accomplishment of the intended killing. Punishing such an attempted murderer with life imprisonment would not run counter to section 664(a)'s purpose of making the punishment proportionate to the crime. Of course, where the natural-and-probable-consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy. In light of such a possibility, it would not have been irrational

for the Legislature to limit section 664(a) only to those attempted murderers who personally acted willfully and with deliberation and premeditation. But the Legislature has declined to do so.

Defendants next rely upon our decisions in *People v. Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], *People v. Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182], and *People v. Piper* (1986) 42 Cal.3d 471 [229 Cal.Rptr. 125, 722 P.2d 899]. Their reliance, however, is misplaced, because none of those decisions proves apposite.

In *Walker*, we considered former section 12022.5, which constituted a penalty provision establishing a sentence enhancement for "[a]ny person who uses a firearm in the commission or attempted commission of" any one of several specified felonies (Stats. 1969, ch. 954, § 1, p. 1900). We concluded that former section 12022.5 required, by implication, that a person who uses a firearm had to use the firearm *personally*. (*People v. Walker, supra*, 18 Cal.3d at pp. 238–242.) We dismissed as inapplicable the law of criminal liability for direct perpetrators and aiders and abettors, on which the People relied in arguing to the contrary. (*Id.* at p. 242.) We reasoned that the underlying principles of the law of criminal liability bore on whether a person might be guilty of a crime, and not on how a person guilty of a crime might be punished. (*Ibid.*) Hence, we declined to employ such principles to remove from former section 12022.5 its requirement of personal use of a firearm. (*People v. Walker, supra*, 18 Cal.3d at p. 242.)

Next, in *Cole* we considered section 12022.7, which constitutes a penalty provision establishing a sentence enhancement for "[a]ny person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony" (Stats. 1979, ch. 145, § 17, p. 341). We concluded that for the section 12022.7 enhancement to apply, the statute expressly requires that a person who personally inflicts great bodily injury had to inflict such injury *personally*. (*People v. Cole, supra*, 31 Cal.3d at pp. 572–579.) In the course of our discussion, we suggested that, had the Legislature intended section 12022.7 *not* to require personal infliction of great bodily injury, it would have included language so indicating, as by speaking in terms of "[a]ny person . . . who inflicts great bodily injury, *whether or not he or she inflicts such injury personally*." (See *People v. Cole, supra*, 31 Cal.3d at p. 576.) Following our reasoning in *Walker*, we declined to employ the law of criminal liability to remove from section 12022.7 its requirement of personal infliction of great bodily injury. (*People v. Cole, supra*, 31 Cal.3d at pp. 575–576.)

Lastly, in *Piper* we considered section 1192.7, subdivision (c) (section 1192.7(c)), which, in conjunction with section 667, constituted a penalty

provision establishing a sentence enhancement for any defendant who commits any one of several specified felonies, including "any felony in which the defendant use[d] a firearm" (Prop. 8, as approved by voters, Primary Elec. (June 8, 1982) § 7, adding § 1192.7(c)(8)) and "any felony in which the defendant personally used a dangerous or deadly weapon" (Prop. 8, as approved by voters, Primary Elec. (June 8, 1982) § 7, adding § 1192.7(c)(23)). We concluded that section 1192.7(c) requires, expressly, that a defendant who commits a felony in which he or she personally used a dangerous or deadly weapon had to have used such a weapon *personally*. (*People v. Piper, supra*, 42 Cal.3d at pp. 475–476.) We likewise concluded that section 1192.7(c) requires, by implication, that a defendant who commits a felony in which the defendant used a firearm had to have used the firearm *personally*. (*People v. Piper, supra*, 42 Cal.3d at pp. 476–478.) In the course of our discussion, we suggested that, had the Legislature intended section 1192.7(c) *not* to require personal use of a firearm, it would have included language so indicating, as by speaking in terms of "any felony in which the defendant used a firearm, *whether or not he or she used a firearm personally*," or at least in terms of "any felony *in which a firearm was used*." (See *People v. Piper, supra*, 42 Cal.3d at pp. 476–477.) Following our reasoning in *Walker* and *Cole*, we declined to employ the law of criminal liability to remove from section 1192.7(c) its requirement of personal use of a firearm. (*People v. Piper, supra*, 42 Cal.3d at pp. 476–477.)

Here, by contrast, section 664(a) does *not* require that an attempted murderer personally act with willfulness, deliberation, and premeditation. It requires only that the attempted murder itself was willful, deliberate, and premeditated. Contrary to the provisions that we considered in *Walker*, *Cole*, and *Piper*, which required certain personal conduct on the part of a person committing a crime, that is the person's use of a firearm, infliction of great bodily injury, or use of a dangerous or deadly weapon, section 664(a) requires only a certain quality characterizing the crime itself, that is that the attempted murder was willful, deliberate, and premeditated. In *Piper*, we implied that if the Legislature had included language in section 1192.7(c) referring to "any felony in which a firearm was used," instead of "any felony in which the defendant use[d] a firearm," it would have revealed an intent not to require personal use. Here, in our view, the Legislature's inclusion in section 664(a) of language referring to the murder attempted as willful, deliberate, and premeditated, instead of to the attempted murderer as personally acting with willfulness, deliberation and premeditation, reveals an intent not to require personal willfulness, deliberation, and premeditation.

Just as we refused in *Walker*, *Cole*, and *Piper*, to *remove*, at the People's behest, personal-conduct requirements imposed by the statutory provisions considered in those cases, here we similarly decline defendants' invitation to *insert* a personal-mental-state requirement not imposed by section 664(a).

Defendants finally invoke two canons of statutory construction—the rule of lenity and the rule of avoidance of grave and doubtful constitutional questions. Neither canon assists their position.

The rule of lenity is inapplicable unless the statute in question is ambiguous, meaning susceptible of two reasonable meanings that " 'stand in relative equipoise . . . .' " (*People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1], quoting *People v. Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].) A reading of section 664(a) reflects the *absence* of any requirement of personal willfulness, deliberation, and premeditation on the part of an attempted murderer, inasmuch as section 664(a)'s language is passive and imposes a requirement only as to the attempted murder—that it be willful, deliberate, and premeditated—and nothing as to the attempted murderer. In light of that language, it is difficult to discern the *presence* of any requirement of personal willfulness, deliberation, and premeditation on the part of an attempted murderer. In any event, a reading requiring personal willfulness, deliberation, and premeditation—even if reasonable—does not stand in relative equipoise with a reading not imposing such a requirement.

Similarly, the rule of avoidance of grave and doubtful constitutional questions is inapplicable unless issues of constitutional magnitude arise. (See, e.g., *People v. Anderson* (1987) 43 Cal.3d 1104, 1146 [240 Cal.Rptr. 585, 742 P.2d 1306].) No such issues are present here. Although defendants again argue that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, is insufficiently blameworthy to be punished with life imprisonment, their argument, as the preceding discussion demonstrates, ignores the very substantial blameworthiness of even this sort of attempted murderer—necessarily so in the general case, and possibly so even under the natural-and-probable-consequences doctrine. More fundamentally, defendants' argument seems predicated on an assumption that punishment must be finely calibrated to a criminal's mental state. Such an assumption is unsound. Punishment takes account not only of the criminal's mental state, but also of his or her conduct, the consequences of such conduct, and the surrounding circumstances. (Cf., e.g., §§ 487, subd. (a), 488, 489, subd. (b), 490 [providing that imprisonment for theft may turn solely on the value of the property taken, without regard to the defendant's mental state].) Such circumstances may include the fact that the murder attempted was willful, deliberate, and premeditated.

In sum, we conclude that section 664(a) properly must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted with willfulness, deliberation, and premeditation, even if he or she is guilty as an aider and abettor.

We therefore conclude that the trial court did not err by failing to instruct the jury to determine personal willfulness, deliberation, and premeditation in the case of an aider and abettor.

Finally, because we conclude section 664(a), properly interpreted, does not require personal willfulness, deliberation, and premeditation on the part of an attempted murderer, we do not address the standard of prejudice applicable to the trial court's omission of an instruction to the contrary.

### III

We now turn to the decision of the Court of Appeal in this case. As noted, the appellate court held that section 664(a) requires that an attempted murderer personally have acted with willfulness, deliberation, and premeditation if he or she is guilty as an aider and abettor. The appellate court went on to conclude that the trial court erred by failing to instruct the jury to determine personal willfulness, deliberation, and premeditation in the situation of an aider and abettor, but further concluded that the error was harmless.

The Court of Appeal erred by interpreting section 664(a) as it did. As we have explained, section 664(a) properly must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally have acted with willfulness, deliberation, and premeditation, even if he or she is guilty as an aider and abettor. Referring to language in section 664(a) to the effect that if the murder attempted is willful, deliberate, and premeditated, "*the person* guilty of that attempt shall be punished by imprisonment . . . for life" (italics added), the appellate court asserted that "the use of the phrase 'the person' indicates" a requirement of personal willfulness, deliberation, and premeditation. We disagree. Although the phrase "the person" indeed refers to the attempted murderer, it does not state or imply that the attempted murderer personally must have acted with willfulness, deliberation, and premeditation. As noted, a person may be guilty of attempted murder, and indeed of any crime, on varying bases and with varying mental states. Furthermore, we believe that in declining to follow *People v. Laster, supra,* 52 Cal.App.4th 1450, the appellate court misread certain language in that decision (see *People v. Laster, supra,* 52 Cal.App.4th at p. 1473) as mischaracterizing section 664(a) so as to create a greater degree of attempted murder rather than to set forth a penalty provision, contrary to *Bright*'s holding that section 664(a) "does *not* create a greater degree of attempted murder but, rather, constitutes a penalty provision" (*People v. Bright, supra,* 12 Cal.4th at p. 656, italics added). *Laster* in fact accurately quotes the language of our opinion in *Bright.* (*People v. Laster, supra,* 52 Cal.App.4th at p. 1470, quoting *People v. Bright, supra,* 12 Cal.4th at p. 656.) In context, the language in *Laster* that was

misread by the Court of Appeal correctly imparts that section 664(a) requires only that the murder attempted was willful, deliberate, and premeditated, but not that an attempted murderer personally have acted with willfulness, deliberation, and premeditation even if he or she is guilty as an aider and abettor.

Notwithstanding the Court of Appeal's error in interpreting section 664(a), and in finding that the trial court erred by failing to instruct the jury in accordance with that interpretation, the appellate court nonetheless affirmed the trial court's judgment because it concluded that the instructional omission was harmless. Having concluded that the trial court did not err, we agree with the appellate court that the trial court's judgment must be affirmed.

## IV

For the reasons stated above, the judgment of the Court of Appeal is affirmed.

Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—An attempt to commit a crime that would be punished by life imprisonment is punishable by a term of five, seven, or nine years in prison. (Pen. Code, § 664, subd. (a), hereafter section 664(a).)[1] In 1986, the Legislature amended section 664(a) to require life imprisonment for an attempted willful, deliberate, and premeditated murder. Does this amendment apply only to a defendant who had *personally* engaged in a willful, deliberate, and premeditated attempt to kill, or does it also apply to an *accomplice* of someone who has attempted such a crime, even if the accomplice does not act willfully, deliberately, and with premeditation? The majority holds that the provision does apply to the accomplice. I disagree. Unlike the majority, I conclude that the trial court in this case misinstructed the jury on the elements of section 664(a). But because the error was harmless, I join the majority in upholding defendants' convictions.

## I

Teenage defendants Phia Lee and Johnson Xiong (14 and 15 years old, respectively) were members of a Hmong gang in Fresno. In April 1995, they had a confrontation with three brothers (Kou H., Cheng H., and Sa H.) and Thanaka T., because a cousin of the brothers might have been in a rival gang. Later that day, three people, identified as defendants and an older man, approached T. and the H. brothers at a house on Burns Street. The older man and defendant Xiong pulled out guns and started shooting, wounding all four

---

[1] All further statutory citations are to the Penal Code.

of them. In June 1995, defendants Lee and Xiong went to an apartment complex in the rival gang's territory. They both opened fire, killing two persons (ages seven and 14), and wounding three others (ages five, 17, and 20). As the two shooters fled, one of them shouted gang slogans.

Both defendants were charged with murder of the two persons fatally shot at the apartment complex and with attempted murder of the four youths wounded on Burns Street and the three people wounded at the apartment complex. The prosecution alleged that all the attempted murders were willful, deliberate, and premeditated. The defense relied on a theory of mistaken identity.

The trial court instructed the jury that if it concluded either that defendants personally engaged in a premeditated attempt to kill the victims or that they aided and abetted someone who did so, it should find true the allegations that defendants were guilty of attempted premeditated murder.[2] The jury convicted Xiong on all counts; it acquitted Lee of the attempted murders on Burns Street but convicted him of the crimes at the apartment complex. The jury found that all the attempted murders were premeditated.

On appeal, defendants faulted the trial court for not telling the jury it could find the attempted premeditated murder allegations true as to a particular defendant only if that defendant *personally* acted with premeditation. The Court of Appeal agreed, but it found the error harmless. This court granted review.

## II

Section 664(a) describes the penalties for attempts. As previously mentioned, it says that the punishment for an attempt to commit a felony punishable by life imprisonment or death is five, seven, or nine years in prison, but "if the crime attempted is willful, deliberate, and premeditated murder . . . the *person guilty of that attempt* shall be punished by imprisonment in the state prison for life with the possibility of parole." (Italics added.) This penalty may be imposed only if "the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (*Ibid.*)

At issue here is the meaning of the italicized phrase in section 664(a), "person guilty of that attempt." Does it refer only to persons who, in an attempt to commit murder, act willfully, deliberately, and with premeditation?

---

[2] For convenience, I use the term "attempted premeditated murder" to describe attempted willful, deliberate, and premeditated murder.

Or does it also apply to one who *does not* have that mental state, but is an accomplice of someone who does?

On point here is *People v. Bright* (1996) 12 Cal.4th 652 [49 Cal.Rptr.2d 732, 909 P.2d 1354]. There, this court held that section 664(a)'s requirement of life imprisonment for attempted premeditated murder is a "penalty provision" (*Bright*, at p. 661) that is "separate from the underlying offense" (*ibid.*) of attempted murder and imposes "an increased sentence . . . when the additional specified circumstances are found true by the trier of fact" (*id.* at p. 669). As I explain below, *Bright*'s holding is dispositive of the issue in this case.

Like a sentence enhancement, a penalty provision specifies circumstances in which a defendant is given a sentence greater, sometimes far greater, than that ordinarily imposed on those convicted of the same crime. The harsher punishment is imposed either because the defendant's conduct is particularly egregious or because the defendant has an exceptionally bad prior criminal record. Thus, almost all penalty provisions and enhancements—unlike criminal offenses—apply only when the conduct of the *defendant*, not that of another perpetrator, is particularly reprehensible. (See, e.g., § 12022, subd. (b) [use of a deadly weapon]; § 12022.1 [crime committed while the defendant is released on bail or recognizance]; § 12022.3 [use of firearm in commission of a rape]; § 12022.5 [use of firearm in commission of a felony]; § 12022.53, subd. (b) [use of firearm in enumerated felonies]; § 12022.53, subd. (c) [discharge of firearm in enumerated felonies]; § 12022.53, subd. (d) [discharge of firearm causing great bodily injury in enumerated felonies]; § 12022.55 [infliction of great bodily injury while discharging a firearm from a vehicle]; § 12022.7, subds. (a), (b), (c), (d), (e) [infliction of great bodily injury in commission of a felony]; § 12022.8 [infliction of great bodily injury in commission of a forcible sex offense]; § 12022.9 [infliction of injury on pregnant woman].) There are certain exceptions. But in those instances the Legislature has expressly mandated application of the sentence enhancement or penalty provision regardless of whether the conduct at issue was committed by the defendant or by a codefendant. (See, e.g., § 12022, subd. (a)(1) [enhancement for being armed with firearm applies to "any principal" in which one of the perpetrators is armed, "whether or not the person is personally armed"]; § 12022.53, subd. (e)(1)(B) [penalty provision applies to firearm use by "[a]ny principal" in the commission of specified gang-related felonies].)

In *People v. Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306] (*Walker*), this court explained the significance of the difference between penalty provisions and sentence enhancements on the one hand, and criminal offenses on the other. At issue in *Walker* was whether the sentence enhancement for firearm use (§ 12022.5) applied only when the defendant personally

used a gun, or whether it also applied when the defendant was an accomplice of the gun user. This court held that the enhancement applied only to personal use, explaining: "Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. Such a direction is found in section 31 which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. *But the statute which defines aiders and abettors as principals . . . does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment ' "do not define a crime or offense but relate to the penalty to be imposed under certain circumstances." '* [Citations.] Hence the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime." (*Walker, supra,* 18 Cal.3d at pp. 241–242, italics added.)

Thus, penalty provisions like the one at issue here consider only the defendant's *personal* conduct, unless there is an express declaration of legislative intent to impose vicarious liability for the conduct of an accomplice. (See *People v. Piper* (1986) 42 Cal.3d 471, 477 [229 Cal.Rptr. 125, 722 P.2d 899] ["Since *Walker,* the Legislature has been quite explicit when it intends an enhancement provision to apply to a defendant even though he himself does not commit the proscribed act"]; see also *People v. Gutierrez* (1996) 46 Cal.App.4th 804, 814 [54 Cal.Rptr.2d 149].) As I shall explain, no such intent appears in section 664(a).

The penalty provision in section 664(a) imposes an increased sentence on a "person guilty of *that attempt*" (italics added); that is, an "attempted . . . willful, deliberate, and premeditated murder." This language is ambiguous. It does not say that an increased sentence is imposed on an *accomplice* of a person who acts willfully, deliberately, or with premeditation. Because there is no clear legislative intent to incorporate the rules governing accomplice liability, section 664(a)'s penalty provision applies only when the defendant has personally engaged in a premeditated attempt to commit murder. (See *Walker, supra,* 18 Cal.3d at p. 242.)

The majority here points out that "section 664(a) states *only* that the murder attempted must have been willful, deliberate, and premeditated, *not* that the attempted murderer *personally* must have acted willfully and with deliberation and premeditation." (Maj. opn., *ante,* at p. 622.) The majority asserts that "[h]ad the Legislature intended to draw a distinction between direct perpetrators and aiders and abettors, it certainly could have done so expressly." (*Ibid.*) But one can just as readily say that if the

Legislature had intended section 664(a)'s penalty provision to apply to accomplices who do not personally premeditate, it could have expressly said so.[3] This case is here because the Legislature did not clarify its intent. When a penalty provision does not expressly state *either* that it applies only to the defendant's personal mental state *or* that it imposes vicarious liability for the mental state of the actual perpetrator when the defendant is merely an accomplice, the court construes it as looking only to the mental state of the defendant. (*Walker, supra,* 18 Cal.3d at p. 242.)

To support its holding that section 664(a)'s penalty provision for attempted premeditated murder applies to a defendant who is an accomplice to a person who acted with premeditation, the majority points to language in section 664(a) that the penalty provision may not be imposed "unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." The majority reasons that the phrase "the attempted murder was . . . premeditated" reflects the Legislature's intent that when there is more than one perpetrator, the penalty provision applies whenever any of the perpetrators acted with premeditation. I disagree. In my view, the purpose of the statutory language just quoted was not to specify who is subject to the penalty provision, but to make clear that the applicability of the penalty provision was to be decided at trial, not at sentencing. The quoted language does not at all indicate a legislative intent to bring within the penalty provision's reach an accomplice of someone who has committed an attempted premeditated murder, when the accomplice has not personally acted with premeditation.

For the reasons given above, I agree with the Court of Appeal that the trial court erred when it instructed the jury that section 664(a)'s penalty provision for attempted premeditated murder applied to all accomplices, regardless of whether the accomplice acted with premeditation. I also agree with the Court of Appeal's further conclusion that the error did not prejudice defendants. Such an error would be prejudicial only if there was evidence that some but not all of the perpetrators acted with premeditation. Here there was no such evidence, and although it is unclear who actually fired the shots that wounded the victims, the jury found that each defendant personally used a firearm in the commission of each of the attempted murders of which they were

---

[3] If the Legislature had made attempted premeditated murder a *crime*, the rules of accomplice liability would automatically have applied, because they apply to all crimes. (See *Walker, supra,* 18 Cal.3d at p. 242.) But as I have pointed out, a majority of this court held in *People v. Bright, supra,* 12 Cal.4th 652, that section 664(a) did not set forth a crime but only a penalty provision. I dissented. (*Bright,* at pp. 683–690 (dis. opn. of Kennard, J.).) In my view, the court cannot reconcile its holding in *Bright* that attempted premeditated murder is merely a penalty provision with its holding here that the added penalty may be imposed on an accomplice who did not personally premeditate.

convicted.[4] The error was therefore harmless beyond a reasonable doubt. (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326 [109 Cal.Rptr.2d 851, 27 P.3d 739] [harmless beyond a reasonable doubt standard applies to "every element of a sentence enhancement that increases the penalty for a crime beyond the 'prescribed statutory maximum' punishment for that crime"].) Thus, I join the majority in upholding defendants' convictions.

Werdegar, J., concurred.

Appellants' petition for a rehearing was denied October 22, 2003. Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.

---

[4] As previously noted, defendant Lee was acquitted of the attempted murders on Burns Street.