Filed 2/23/26  P. v. Darden CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085105 |
| v. | (Super.Ct.No. RIF091190) |
| TELESFORO JOSEPH DARDEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Joshlyn R. Pulliam, Judge.  Affirmed.

Courtney Reed, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Stephanie H. Chow and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Telesforo Joseph Darden appeals from the trial court's order denying his Penal Code[1] section 1172.6 petition for resentencing at the prima facie review stage. A jury convicted defendant of attempted premeditated murder (§§ 187, 664), along with numerous other felonies, for helping an accomplice commit a gang-related shooting. On appeal, defendant asserts he is eligible for resentencing relief because the jury instructions when read together show he was convicted on a theory of imputed malice or theories of liability that are no longer valid.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant drove codefendant Jason Coryell to an apartment where rival gang member H.B. was. When H.B. emerged, Coryell shot at him. As defendant and Coryell sped away, Coryell fired more shots, hitting a car and a house. (*Coryell*, *supra*, at p. 5.)

The police were called and a description of defendant's vehicle went out. (*Coryell*, *supra*, at p. 6.) Riverside Sheriff's Deputy Dan Kelly soon spotted the vehicle

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] We provide factual context relating to the attempted murder from the prior appellate opinion from defendant's direct appeal. (*People v. Coryell* (July 28, 2003, E030693) [nonpub. opn.] (*Coryell*).) "These facts are 'for background purposes and to provide context for the parties' arguments.' [Citation.] We do not rely on these facts to review the trial court's determination for [defendant's] prima facie showing." (*People v. Rushing* (2025) 109 Cal.App.5th 1025, 1028, fn. 2.)

and pulled it over. Coryell shot at the deputy. Defendant tried to flee on foot but was apprehended. (*Ibid*.)

On April 18, 2001, an amended information was filed charging defendant with three counts of attempted murder (§§ 664, 187; counts 1, 3 & 5); one count of assault with a semiautomatic firearm on peace officer (§ 245, subd. (d)(2); count 2); two counts of assault with a semiautomatic firearm on H.B. (§ 245, subd. (b); counts 4 & 6); two counts of shooting at an inhabited dwelling house (§ 246; counts 7 & 8); one count of carjacking (§ 215; count 9); one count of taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a); count 10); one count of assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1); count 11); misdemeanor battery (§ 242; count 12); and misdemeanor brandishing a weapon (§ 417; count 13). The amended information also alleged firearm enhancements pursuant to section 12022.53, subdivision (c) as to counts 1, 2, 3 and 5, a firearm enhancement pursuant to section 12022.5 as to count 4, and gang enhancements pursuant to section 186.22, subdivision (b) as to counts 1 through 11. The amended information also alleged that defendant had suffered a prior prison term (§ 667.5, subd. (b)), a prior serious felony (§ 667, subd. (a)), and a prior strike conviction (§§ 667, subds. (c) & (e) & 1170.12, subd. (c).)

On July 23, 2001, a jury found defendant not guilty as to counts 1 and 2, and guilty as to counts 3, 4, 8, 9, 10 and 11. The jury found the firearm enhancement pursuant to section 12022.53 not true as to count 3, but found the gang enhancement

pursuant to section 186.22, subdivision (b), true for all counts for which they found defendant guilty. The remaining enhancements were stricken. Defendant admitted the prior strike conviction. The trial court sentenced defendant to 15 years plus 30 years to life plus life in prison.

On direct appeal, this court vacated defendant's vehicle theft conviction and ordered that a concurrent term imposed on the assault with a deadly weapon (§ 245, subd. (a)) conviction be stayed under section 654. (*Coryell*, *supra*, at p. 41.) Defendant was subsequently resentenced.

In 2022, defendant filed a petition for resentencing pursuant to former section 1170.95 (now section 1172.6.)

The trial court appointed counsel for defendant. Following numerous continuances, the court held a prima facie hearing on November 26, 2024. The court noted that it reviewed and took judicial notice of the court's own records and the jury instructions provided by the People. The court found that defendant failed to make a prima facie case and found defendant ineligible for resentencing. Defendant timely appealed.

## III.

## DISCUSSION

Defendant contends "the packet of jury instructions created a realistic risk that the jurors imported the imputation of malice principle into their evaluation" of the attempted murder of H.B. charged in count 3. Specifically, he assets when the jury instructions are

4

read together with CALJIC No. 3.01's generic aiding-and-abetting instruction and CALJIC No. 8.66's attempted-murder elements, the jury could have convicted him on a theory of imputed malice, a theory of liability that is no longer valid, and the trial court should have issued an order to show cause since the court may not resolve the ambiguity at the prima facie stage.

A. *Governing Law and Standard of Review*

Effective 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018, Reg. Sess.) (Stats. 2018, ch. 1015), which amended the law of murder. Senate Bill No. 1437 eliminated murder liability "as an aider and abettor solely because the 'natural and probable consequences' of [another] crime included a confederate's commission of murder." (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).) The bill also amended the felony-murder rule, limiting murder liability to actual killers, those who aid or abet the actual killer with the intent to kill, and major participants in the underlying felony who act with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) Effective 2022, Senate Bill No. 775 (2021-2022, Reg. Sess.) (Stats. 2021, ch. 551) "expanded Senate Bill No. 1437's mandate by eliminating any 'other theory under which malice is imputed to a person based solely on that person's participation in a crime' as a means of finding a defendant guilty of murder." (*People v. Love* (2025) 107 Cal.App.5th 1280, 1286 (*Love*); accord, *People v. Antonelli* (2025) 17 Cal.5th 719, 724 (*Antonelli*); *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.)

5

Senate Bill No. 1437 created former section 1170.95, now section 1172.6, to provide "a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*Strong*, *supra*, 13 Cal.5th at p. 708, fn. 2.) Under section 1172.6, a person convicted of "murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated." (§ 1172.6, subd. (a).) The petition must allege entitlement to relief because "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes" made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) The petition must also state whether the petitioner requests appointed counsel. (See § 1172.6, subd. (b).) When a facially sufficient petition is filed, the court must appoint counsel, if requested. (See § 1172.6, subd. (b)(3).) Once the prosecutor has filed a response, and the petitioner has an opportunity to submit a reply, the "court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c); see *Strong*, *supra*, 13 Cal.5th at p. 708.)

The trial court's prima facie inquiry determines whether the petitioner is ineligible for resentencing relief as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*); see *People v. Harden* (2022) 81 Cal.App.5th 45, 51-52.) At the prima facie stage, the court must accept the petitioner's factual allegations as true and " 'should not

6

reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing,' " nor "engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at pp. 971-972; accord, *Patton*, *supra*, 17 Cal.5th at p. 563.) The court may consult the record of conviction, however, and " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971; accord, *Patton*, at p. 563.) "In assessing section 1172.6 petitions from individuals convicted following jury trials, the jury instructions will be critical." (*Antonelli*, *supra*, 17 Cal.5th at p. 731.) The court should also "look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [the] petition." (*People v. Curiel* (2023) 15 Cal.5th 433, 465 (*Curiel*).)

We review de novo the denial of a section 1172.6 petition at the prima facie stage. (*Love*, *supra*, 107 Cal.App.5th at p. 1287; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251 (*Williams*).)

B. *Attempted Murder Law*

" 'Specific intent to kill is a necessary element of attempted murder. It must be proved, and it cannot be inferred merely from the commission of another dangerous crime.' " (*People v. Collie* (1981) 30 Cal.3d 43, 62; see *People v. Lee* (2003) 31 Cal.4th 613, 623 (*Lee*) ["Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing."]; *People v.*

*Rodriguez* (2024) 103 Cal.App.5th 451, 456 (*Rodriguez*) ["Implied malice cannot support a conviction of attempted murder."]; *People v. Mumin* (2023) 15 Cal.5th 176, 190 [same].) An intent to kill is shown if the assailant either desires the death of the victim or knows to a substantial certainty that death will occur as the result of the assailant's action. (*People v. Smith* (2005) 37 Cal.4th 733, 739.)

"Prior to the enactment of Senate Bills Nos. 1437 [citations] and 775 [citations], the natural and probable consequences doctrine provided an avenue for finding an aider and abettor acted with malice. [Citation.] Under this doctrine, an aider and abettor who lacked a specific intent to kill could be found guilty of attempted murder solely due to their participation in a different target crime, if attempted murder was the natural and probable consequence of the target crime." (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 456.) When a defendant was "found guilty of attempted murder under a natural and probable consequences theory of liability, the 'intent to kill' was imputed onto [the defendant] from the actual killer or perpetrator." (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007.) "Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder. Accordingly, the natural and probable consequences doctrine theory . . . is now invalid." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.) Section 1172.6 thus "permits a defendant convicted of attempted murder under the natural and probable consequences doctrine to petition for resentencing." (*Rodriguez*, at p. 457.)

8

Although a defendant can no longer be held liable for attempted murder based on the natural and probable consequences doctrine, under current law, "[d]irect aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); see *People v. Ervin* (2021) 72 Cal.App.5th 90, 101 ["Liability for intentional, target offenses is known as 'direct' aider and abettor liability; liability for unintentional, nontarget offenses is known as the ' " 'natural and probable consequences' doctrine." ' "].)

For the purposes of direct aider and abettor liability, "[w]hen the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person 'must share the specific intent of the [direct] perpetrator,' that is to say, the person must 'know [ ] the full extent of the [direct] perpetrator's criminal purpose and [must] give[ ] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' [Citation.] Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*Lee, supra*, 31 Cal.4th at p. 624; see *People v. Acero* (1984) 161 Cal.App.3d 217, 224 ["a jury must find the aider and abettor shared the perpetrator's specific intent to kill"]; *People v. Chiu* (2014) 59 Cal.4th 155, 166-167, superseded by statute as stated in *Lewis, supra*, 11 Cal.5th at p. 959, fn. 3 [discussing direct aiding and abetting principles]; *Chiu*, at pp. 171-172 (conc. & dis. opn.

9

of Kennard, J.); *People v. Gentile* (2020) 10 Cal.5th 830, 843, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869 [explaining direct aiding and abetting principles]; *People v. Powell* (2021) 63 Cal.App.5th 689, 712-713 ["As the court in *McCoy* made clear, direct aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea."].)

C. *Analysis*

Defendant concedes that the jury was not instructed with the conspiracy instruction, CALJIC No. 6.11, and that the opening brief mistakenly suggested the instruction had been given to the jury. Defendant concedes the jury was not instructed on the natural and probable consequences doctrine, CALJIC No. 3.02, or felony murder liability as to count 3. But he asserts he made a prima facie showing of eligibility for resentencing under section 1172.6 because the jury could have convicted him on another theory of imputed malice because the jury was instructed with CALJIC No. 3.02 as to counts 1 and 2 and presumes the jury read that instruction as to count 3. In defendant's view, when read together with the generic jury instruction on aiding and abetting liability (CALJIC No. 3.01) and CALJIC No. 8.66's attempted-murder elements, the jury instructions, which included CALJIC No. 3.02 as to counts 1 and 2, "created a realistic risk that jurors imported the imputation of malice principle into their evaluation of [c]ount 3." As explained below, we conclude defendant's arguments lack merit.

The record conclusively establishes defendant is ineligible for section 1172.6 resentencing as a matter of law. The jury's findings necessarily reflect that defendant was

10

not convicted under any theory of liability affected by Senate Bill Nos. 1437 and 775. The jury in this case was instructed that to prove attempted murder, each of the following elements must be proved: "1. A direct but ineffectual act was done by one person towards killing another human being; and  [¶]  2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66.)  The jury was also instructed on direct aiding and abetting liability, which remains a valid theory " 'because a direct aider and abettor to murder must possess malice aforethought.' " (*Williams*, *supra*, 86 Cal.App.5th at p. 1252; accord, *People v. Burns* (2023) 95 Cal.App.5th 862, 869 [Senate Bill No. 1437 " 'did not change accomplice liability for murder under direct aiding and abetting principles' "]; *Coley*, *supra*, 77 Cal.App.5th at p. 546; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 (*Estrada*).)  Indeed, CALJIC No. 3.01 instructed the jury that to find defendant guilty of attempted murder in count 3, it had to find defendant had "knowledge of the unlawful purpose of the perpetrator" and "the intent or purpose of committing or encouraging or facilitating the commission of the crime."[3]  On this basis, the jury's guilty verdict on count 3 necessarily reflected that the jury found defendant directly aided and abetted the attempted murder with malice aforethought, i.e., knowledge of the perpetrator's purpose and personal intent to facilitate the attempted murder.

---

[3] The jury was specifically instructed that "[a] person aids and abets the commission or attempted commission of a crime when he or she,  [¶]  1. With knowledge of the unlawful purpose of the perpetrator and  [¶]  2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and  [¶]  3. By act or advice aids, promotes, encourages or instigates the commission of the crime." (CALJIC No. 3.01.)

The jury was further instructed with CALJIC No. 17.00, which ensured that in order to convict defendant of aiding and abetting the attempted murder, the jury had to consider defendant's guilt separately from codefendant Coryell's, and also find that defendant himself harbored the requisite intent to kill. (CALJIC No. 17.00 ["You must decide separately whether each of the defendants is guilty or not guilty."].)

Under the instructions given to the jury, in order to convict defendant of attempted murder as an aider and abettor, the jury necessarily found defendant knew Coryell's criminal purpose to kill H.B., a rival gang member, and with the intent of committing, encouraging, or facilitating the attempted murder of H.B., defendant aided, promoted, encouraged, or instigated the attempted murder by his own words or conduct. When a jury has been instructed as defendant's jury was, our Supreme Court has declared that " 'the person guilty of attempted murder as an aider and abettor must intend to kill.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054, quoting *Lee*, *supra*, 31 Cal.4th at p. 624; *People v. Gonzalez* (2012) 54 Cal.4th 643, 654, fn. 8.)

The instructions thus required defendant's jury to find that he personally shared the actual shooter's intent to kill. This finding constitutes a finding of express malice, which renders defendant ineligible for section 1172.6 relief as a matter of law. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 182-183.)

Defendant's arguments to the contrary are unpersuasive. While the jury was instructed with CALJIC No. 3.02 as to counts 1 and 2, there is no evidence in the record to suggest the jury relied on this instruction as to count 3. The jury found defendant not

guilty on counts 1 and 2, the attempted murder of the deputy and another person, thus rejecting the natural and probable consequences theory. Defendant's argument that the jury relied on CALJIC No. 3.02 in convicting defendant on count 3 is mere speculation. As stated, the jury was not instructed on the natural and probable consequences doctrine and there was no identification of any target offense from which the murder naturally and probably occurred as to count 3, so this was not a theory under which defendant could have been convicted. (See *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1031-1032 [affirming prima facie denial of section 1172.6 petition where jury received an incomplete reference to the natural and probable consequences doctrine in jury instructions because the language was not a complete instruction on the theory and the jury instructions required the jury to find personal malice]; *Estrada*, *supra*, 77 Cal.App.5th at p. 947 [same].)

Defendant's reliance on *Antonelli*, *supra*, 17 Cal.5th 719 is misplaced. There, our high court held that because a jury could have imputed malice to a non-provocateur defendant in a provocative act murder prosecution before *People v. Concha* (2009) 47 Cal.4th 653, "the Court of Appeal was wrong to conclude that such a defendant would be categorically ineligible for section 1172.6 relief." (*Antonelli*, at p. 731.) The Supreme Court also stated that "the jury instructions tracked the governing law at the time of" (*id.* at p. 732) defendant Antonelli's trial, which " 'imposed culpability on all perpetrators of the underlying crime so long as the provocateur acted with malice, and did so in furtherance of the common criminal design,' provided that the deceased was not the sole

13

provocateur." (*Id.* at p. 730.) *Antonelli* is inapposite to our conclusion that defendant is ineligible for relief as a matter of law under the plain language of section 1172.6, subdivision (a) regarding attempted murder on count 3.

Defendant appears to argue that the instruction failed to differentiate between the actual killer and the aider and abettor in defining malice because references to "[t]he person committing the act" in CALJIC No. 8.66 allowed the jury to simply impute Coryell's mental state to defendant. The argument lacks merit. There is no ambiguity in CALJIC No. 8.66. The phrase "[t]he person committing the act" in CALJIC No. 8.66 clearly refers to the perpetrator, in this case Coryell, the actual shooter. Defendant does not contend otherwise.

In sum, based on the instructions given at trial, the jury's verdict conclusively establishes that defendant was convicted on a valid theory of murder liability unaffected by Senate Bill No. 1437.

IV.

DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


McKINSTER

Acting P. J.


MILLER

J.