Filed 6/30/14  Certified for publication 7/9/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>GERARDO JUAREZ,<br><br>    Defendant and Respondent. | G049037<br><br>(Super. Ct. No. 12CF3528) |
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>EMMANUEL JUAREZ,<br><br>    Defendant and Respondent. | G049038<br><br>(Super. Ct. No. 12CF3528)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg Prickett, Judge.  Reversed.

Tony Rackauckas, District Attorney, and Brian F. Fitzpatrick, Deputy District Attorney, for Plaintiff and Appellant.

Frank Davis, Alternate Defender, and Antony C. Ufland, Deputy Alternate Defender, for Defendant and Respondent Gerardo Juarez.

John F. Schuck for Defendant and Respondent Emmanuel Juarez.

Penal Code section 1387[1] limits the number of times the People may file a complaint for the "same offense." In the case of a felony, the People may file twice. Here, twice the People filed attempted murder charges, and both cases were dismissed. The People then filed a third complaint. Instead of filing charges of attempted murder, which would be barred under section 1387, the People alleged *conspiracy* to commit murder, which arose out of the same underlying incident. The trial court held this was the "same offense," for purposes of section 1387, and dismissed the complaint. The People appealed.

We reverse. Our high court has narrowly defined "same offense" as an offense with identical elements. Defendants may attempt murder without conspiring to murder, and may conspire to murder without attempting to murder. Thus, they were not the same offense, and section 1387 did not bar the filing of the third complaint.

FACTS

In June 2011, the People filed their initial complaint against defendants Gerardo Juarez and Emmanuel Juarez, alleging, among other things, two counts of attempted murder against each defendant.[2] In November 2011, the court held a preliminary hearing that disclosed the following evidence.

This case arises from an incident in which defendant Emmanuel fought with victim John Doe. Prior to the fight, Emmanuel handed a gun to defendant Gerardo. During the fight, Gerardo handed the gun back to Emmanuel. Emmanuel then shot John

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Because the defendants share the same last name, we refer to them by first name to avoid confusion.

Doe. John Doe's companion, Jane Doe, attempted to flee, but defendants caught up with her and Gerardo shot her in the thigh.

After defendants were held to answer, the People filed an information alleging two counts of attempted murder (§§ 664, subd. (a), 187, subd. (a).) against both defendants, and one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)) against Gerardo. Nearly eight months later, in June of 2012, the People filed an amended information that added counts for assault with a firearm (§ 245, subd. (b)). For reasons not disclosed in the record, in July 2012 the court granted the People's motion to dismiss the case.[3]

That same day, the People refiled the same charges. In November 2012, the People were not ready to proceed to trial and requested a continuance. The court granted the continuance to December 10, 2012, but warned that December 10 would be day 10 of 10. On December 10, the People were again not ready to proceed, so the court dismissed the case in its entirety.

The People then filed a third case against defendants, this time alleging two counts of conspiracy to commit murder. The facts recited in the complaint indicate the charges were based on the same incident as the previous complaints.

Defendants moved to dismiss this complaint under section 1387. The magistrate denied the motion without comment.

Defendant then petitioned the superior court for a writ of mandate or prohibition, which the court treated as a petition for writ of habeas corpus. During oral argument, the court posed the following questions to the People: "Where is the limit in regard to your theory of refiling? [¶] If we take assaultive conduct like attempted murder, you could have two dismissals for an attempted murder, and then you could have

---

[3] During oral argument in the trial court, defense counsel claimed that the People dismissed the first time because they had not produced 800 pages of mandatory discovery at the time of trial.

two dismissals for an assault with a deadly weapon, and then you could have two dismissals for an attempted vol[untary manslaughter], and then you could have two dismissals for assault by force likely to produce great bodily injury, and then you could have two dismissals for a [section] 243[, subdivision (d)] battery causing great bodily injury. Where would it end?" The court later granted the petition without further comment and dismissed the case. The People timely appealed.

DISCUSSION

Penal Code section 1387, subdivision (a), states, "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony." As the reader may note, this statutory formulation leaves much to be desired. Our Supreme Court has observed that section 1387 "has been amended nine times since its adoption in 1872, and the resulting 108-word, 13-comma, no period subdivision is hardly pellucid . . . ." (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1018 (*Burris*).) To oversimplify, what the statute means is that a felony complaint may be refiled once but a misdemeanor complaint may not.

The weakness in this oversimplification was exposed by the situation encountered in *Burris*, *supra*, 34 Cal.4th at page 1012. There, the People filed a misdemeanor complaint for driving under the influence, but later decided there was sufficient evidence to support a felony, so the People dismissed the misdemeanor complaint and refiled a felony complaint. (*Id.* at pp. 1015-1016.) The defendant moved to dismiss under section 1387. (*Burris*, at p. 1016.) Is this considered a misdemeanor for purposes of section 1387, such that refiling is impermissible, or a felony? The *Burris*

4

court held it was the second filing that determined which rule applied. (*Burris*, at p. 1019.) Since the second filing was a felony complaint, the refiling was permissible.

The logical consequence of that rule was tested in *People v. Traylor* (2009) 46 Cal.4th 1205 (*Traylor*), where the opposite occurred. The People filed a felony complaint for vehicular manslaughter with gross negligence. (*Id.* at p. 1210.) After the preliminary hearing, the magistrate dismissed the charge on the ground there was insufficient evidence of gross negligence, but expressed the view that the evidence would support a misdemeanor charge of negligent vehicular manslaughter. (*Id.* at p. 1210.) The People then refiled the misdemeanor charge, and the defendant moved to dismiss. (*Id.* at p. 1211.) Under the rule announced in *Burris*, since the misdemeanor charge was the second filing, the rule preventing a refiling of a misdemeanor charge applied.

To avoid that result, the *Traylor* court took a narrow view of the statutory phrase "same offense." Two charged offenses are the "same offense" only if they include "identical elements." (*Traylor*, *supra*, 46 Ca.4th at p. 1208.) The court made clear that the protection offered by section 1387 is "narrow," and emphasized that in interpreting the term "same offense," it is *not* the underlying criminal conduct that matters, but the elements of the offense charged. (*Traylor*, at p. 1213, fn. 6.) Since the subsequent misdemeanor charge did not require proof of gross negligence as the felony charge had, they were not the "same offense." (*Ibid.*)

The *Traylor* court supported its holding by noting the result comported with the policy goals of section 1387. "A primary purpose of section 1387[, subdivision (a)] is to protect a defendant against harassment, and the denial of speedy-trial rights, that results from the repeated dismissal and refiling of identical charges. In particular, the statute guards against prosecutorial 'forum shopping' — the persistent refiling of charges the evidence does not support in hopes of finding a sympathetic magistrate who will hold the defendant to answer. On the other hand, the statute was not intended to penalize the People when, following a magistrate's dismissal of a first felony complaint on the

5

grounds the evidence supports only a lesser included misdemeanor, they elect to refile that lesser charge *rather than exercise their undoubted statutory right to refile the felony*. Under such circumstances, prosecutors do not abuse, but actually promote, the statutory purposes." (*Traylor*, *supra*, 46 Cal.4th at p. 1209.)

Here we encounter the next antithesis in the dialectical process: attempted murder and conspiring to murder do not share identical elements, but permitting a refiling here *would* violate the policies supporting section 1387.

Conspiracy to commit murder requires an agreement to commit murder and an overt act by one or more of the parties in furtherance of the agreement. Our high court has specifically noted the distinction between conspiracy and attempt, stating, """"As an inchoate crime, conspiracy fixes the point of legal intervention at [the time of] agreement to commit a crime," and "thus *reaches further back into preparatory conduct than attempt . . . .*"""" (*People v. Morante* (1999) 20 Cal.4th 403, 417, italics added.) Attempted murder does not require any agreement. It "requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) Thus the two charges do not share identical elements.[4]

The policy goals of section 1387, on the other hand, unlike the facts of *Traylor*, militate in favor of application of section 1387. "Section 1387 implements a series of related public policies. It curtails prosecutorial harassment by placing limits on

---

[4] And although a conspiracy charge need not be pleaded, it cannot be said that the attempted murder charge impliedly set forth a conspiracy claim of conspiring to attempt murder. "This is because the targeted crime of the conspiracy, attempted murder, requires a specific intent to actually commit the murder, while the agreement underlying the conspiracy pleaded to contemplated no more than an ineffectual act. No one can simultaneously intend to do and not do the same act, here the actual commission of a murder. This inconsistency in required mental states makes the purported conspiracy to commit attempted murder a legal falsehood." (*People v. Iniguez* (2002) 96 Cal.App.4th 75, 77.)

the number of times charges may be refiled.  [Citations.]  The statute also reduces the possibility that prosecutors might use the power to dismiss and refile to forum shop.  [Citations.]  Finally, the statute prevents the evasion of speedy trial rights through the repeated dismissal and refiling of the same charges." (*Burris*, *supra*, 34 Cal.4th at p. 1018.)  The refilings here were simply the result of the People failing to timely prepare to move forward.  Thus they directly implicate defendant's right to a speedy trial.  And while there is no evidence of intentional harassment here, the trial court's forceful questioning of the prosecutor raises legitimate concerns about the possibility of repeated filings if we only look at the elements of the crime.

Ultimately, however, we are bound by our Supreme Court.  And while we believe the trial court has raised a legitimate concern, that concern is properly directed to our Supreme Court's narrow interpretation of the term "same offense."  Also, though examining outcomes in light of policy goals may be a useful tool in interpreting otherwise ambiguous language (*Burris*, *supra*, 34 Cal.4th at pp. 1017-1018), there is nothing ambiguous about our high court's interpretation of "same offense," and we are not at liberty to deviate from that interpretation.

Defendants encourage us to apply a broader definition of "same offense" that would treat attempted murder and conspiring to murder as the same offense.  They principally rely on *Wallace v. Municipal Court* (1983) 140 Cal.App.3d 100 (*Wallace*) and *Dunn v. Superior Court* (1984) 159 Cal.App.3d 1110 (*Dunn*), cases which defendants interpret as adopting a so-called "essence" test.  Under defendants' proposed rationale, if the essence of the offense charged in the later filing is the same as the essence of the offense charged in the earlier filing, the latter filing is barred.

*Wallace* framed the issue before it as follows: "[S]ection 853.6, subdivision (e)(3), provides that the failure of the prosecutor to file the notice to appear or a formal complaint in the municipal or justice court within 25 days of the arrest shall bar prosecution of the misdemeanor charged in the notice to appear. The principal issue in this writ proceeding is whether, for the purposes of the bar of that section, the crime of driving under the influence of an alcoholic beverage or any drug in violation of Vehicle Code section 23152, subdivision (a), is the same offense as driving with a blood-alcohol level of 0.10 percent or more in violation of Vehicle Code section 23152, subdivision (b). We hold that it is not."[5] (*Wallace*, *supra*, 140 Cal.App.3d at pp. 102-103.) The *Wallace* court noted that it was applying the same concept as the "same offense" language used in section 1387. (*Wallace*, at p. 105.) In reaching its conclusion, the *Wallace* court stated, "The general rule . . . is that when the *essence* of the offense charged in a second action is the same as the essence of the offense in a previously dismissed action the second action will be barred." (*Id.* at p. 107, italics added.) Although *Wallace* did not define "essence," it went on to note that one can drive under the influence without having a blood-alcohol level of 0.10 percent or more, and vice versa, and thus the two are not the same offense. (*Id.* at p. 108.)

In *Dunn* the People first charged the defendant with, among other things, kidnapping (§ 207) and theft of an automobile (Veh. Code, § 10851). (*Dunn*, *supra*, 159 Cal.App.3d at p. 1113.) The People dismissed those charges and refiled charges of kidnapping for the purpose of robbery (§ 209) and robbery (§ 211). (*Dunn*, at p. 1114.) The magistrate did not hold those charges to answer. The district attorney then reinstated the charges in an information, and the defendant moved to dismiss under section 1387. (*Dunn*, at p. 1114.) The *Dunn* court held the third filing was barred. It mentioned the

---

[5] At the time *Wallace* was decided, Vehicle Code section 23152, subdivision (b), prohibited driving with a blood-alcohol level of 0.10 percent or greater. That section was since amended to reflect 0.08 percent or greater.

8

"essence" test articulated in *Wallace* and stated, "Kidnapping for the purpose of robbery cannot be committed without committing the lesser offense of kidnapping. Two dismissals of kidnapping should bar a prosecution for kidnapping for the purpose of committing robbery on the theory that to charge the greater would be also to charge the lesser an additional and prohibited third time." (*Dunn*, at p. 1118.) With respect to the theft of an automobile and robbery charges, the court found they were in "essence" the same, stating, "Although every robbery does not include an auto theft, the concept of necessarily included offenses permits reference to the facts in the accusatory pleading. [Citation]. Here, the essence of the auto theft and robbery is the same since the robbery was specifically alleged to be the taking of the same automobile." (*Dunn*, at pp. 1118-1119.)

From these cases, Emmanuel contends "a court can properly consider the essence of the charges and the underlying criminal act, as well as whether the third refiling involves the same statutory offense," which Emmanuel goes on to describe as "[a] consideration of all the circumstances . . . ."

The problem is, *Traylor* extensively discussed *Dunn* and interpreted it as applying the same elements test. (*Traylor*, *supra*, 46 Cal.4th at pp. 1217-1218.) It interpreted *Dunn* as consistent with the same elements test because in *Dunn* the People initially charged lesser crimes, and the subsequent greater crimes contained all of the same elements as the earlier-charged crimes. (*Traylor*, at pp. 1217-1218.) Since the same elements test was satisfied, applying the bar of section 1387 was proper.

Further, the *Traylor* court expressly rejected the contention that "section 1387[, subdivision (a)] should apply to all charges arising from the *same conduct or behavior* of the defendant." (*Traylor*, *supra*, 46 Cal.4th at p. 1213, fn. 6.) Rather, the court held, "[A]n 'offense' is defined not by conduct, but by its particular definition as such in the Penal Code." (*Ibid.*)

9

Defendants' final argument is that a footnote in *Traylor* limits its scope. At the end of the opinion, the court added the following footnote: "As the reader will notice, we have carefully limited our holding to the situation in which an initial *felony* charge, having been dismissed by a magistrate on grounds that the evidence supports only a lesser included misdemeanor, is followed by the filing of a second complaint charging that *misdemeanor* offense. We do not here confront, and expressly do not decide, how section 1387[, subdivision (a)] should apply when dismissed felony charges are followed by one or more new complaints charging lesser included *felonies*, or when a dismissed *misdemeanor* charge is followed by a new complaint charging a lesser included *misdemeanor*." (*Traylor*, *supra*, 46 Cal.4th at p. 1220, fn. 10.)

In our view, this footnote does not significantly limit the application of *Traylor*. While the court's *holding* may have been narrow, the rationale it used to get there — that "same offense" means identical elements — is quite broad in its application. The examples the court gave of what it was *not* deciding (e.g. a felony followed by a refiled lesser included felony) are not at issue here. And in any event, given the court's rationale, we fail to see how a felony followed by a lesser included felony would have any different result than a felony followed by a lesser included misdemeanor.

We recognize the result we reach is counterintuitive, and generally not in keeping with the policies section 1387 is supposed to represent. However, our hands are tied. The muddled language of section 1387 has not stood the test of time, and our high court's struggle to interpret that language has resulted in a law with narrow protection. If that protection is to be broadened, it is up to the Legislature.

10

DISPOSITION

The judgment dismissing the case is reversed.  The trial court is directed to reinstate the case.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

11

Filed 7/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Appellant, | G049037 |
|       v. | (Super. Ct. No. 12CF3528) |
| GERARDO JUAREZ, | |
|     Defendant and Respondent. | |
| THE PEOPLE, | |
|     Plaintiff and Appellant, | G049038 |
|       v. | (Super. Ct. No. 12CF3528) |
| EMMANUEL JUAREZ, | O R D E R |
|     Defendant and Respondent. | |

Appellant has requested that our opinion, filed on June 30, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

2