Filed 3/21/24  P. v. Daniels CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>DARRYL DANIELS,<br><br>        Defendant and Appellant. | A167096<br><br>(Contra Costa County<br>Super. Ct. No. 05000504506) |

In 2005, defendant Darryl Daniels was convicted by a jury of two counts of attempted murder along with his co-defendant, Charles Gordon.  In 2022, Daniels, through counsel, petitioned for resentencing under changes to the law relating to accomplice liability for murder made by Senate Bill No. 1437 (Stats. 2018 (2017–2018 Reg. Sess.) ch. 1015).  The trial court denied the petition after a hearing, concluding that the record of conviction established that Daniels was ineligible for relief under Senate Bill No. 1437 as a matter of law.  We affirm.

## BACKGROUND

In 2005, Daniels and his codefendant Charles Gordon were convicted of the December 17, 2004 attempted murder (Pen. Code[1], §§ 187, 664, subd. (a)) of Sean McClellan and the January 12, 2005 attempted murder of Irving Griffin, as well as second degree robbery (§ 211).  Daniels was also separately

---

[1] Further undesignated statutory references are to the Penal Code.

found guilty of carjacking (§ 215, subd. (a)), discharging a firearm from a vehicle (former § 12034), and discharging a firearm at an occupied vehicle (§ 246), along with various enhancements.  He was sentenced to 56 years to life with the possibility of parole.  In 2009, we affirmed Daniels' convictions on direct appeal.  (*People v. Daniels* (Mar. 6, 2009) A113184, 2009 WL 568918, at p. *1 [nonpub. opn.].)

**The Shootings**

Our previous opinion provided the following factual background with respect to the attempted murders:

"Daniels and Gordon were convicted of the attempted murder of Sean McClelland.  McClelland did not testify because he died before the trial. Pittsburg Police Officer Erik Severe testified that on the evening of December 17, 2004, he went to a hospital and spoke with McClelland, who had been shot eight times outside the Woods Manor apartment complex.  McClelland refused to identify who had shot him.  Officer Severe testified that after he left McClelland he went to the apartment complex, where he observed a number of .40 and 9 mm. shell casings.  The casings, which were clustered together by caliber, were collected as evidence.  No witness to the shooting was found.

"Rhonda Hardy testified that in December 2004 she lived at Woods Manor.  She was friendly with Daniels and Gordon; her brother Steve was also a friend of Gordon's.  Hardy also knew Sean McClelland, who was dating Gordon's sister, and who was often seen with Gordon.

"Hardy testified that one evening in mid-December, Daniels and Gordon were at her apartment and she heard Daniels talking on the telephone to McClelland, telling him to come to one of the Woods Manor apartments 'to come pick up the gun.'  Gordon left, then called the apartment

2

and spoke to Daniels.  Gordon returned, picked up Daniels—who put on 'one of those pull-over hats'—and the two then left.  Hardy testified that she saw Daniels and Gordon wait for McClelland.  Each had a gun.  When McClelland appeared, 'they just started shooting.'  After McClelland staggered away, Daniels and Gordon stopped firing, and they ran from the scene.  [¶] . . . [¶]

"David Wagner testified that on the afternoon of January 12, 2005, he was walking home from work.  He was near the Parkside Market on Davi Avenue in Pittsburg when he noticed a white sedan stopped in the middle of the intersection.  The car had three African-American male occupants, one driving and two in the back seat. Wagner further testified that he heard a 'bang' and saw a man 'falling.'  The car then 'took off' at high speed.  Wagner called 911.

"The man shot was Irving Griffin, who testified that on January 12 he and his cousin Dupree Straughter were approaching a market on Davi Street when he was shot in the back.  Griffin never saw two men jump out of a white car, and he had no memory of being shot.  Griffin knew Daniels because '[w]e was incarcerated in Byrons Boys Ranch;' he did not know Gordon.  Griffin further testified he did not recall telling Officer Sullivan that he saw a white Buick speeding away from the scene.  [Fn. omitted]  After he was taken to the hospital, Griffin told police there was no reason for him to attempt to identify who shot him because he did not see his assailants.  . . .  [¶] . . . [¶]

"Paul Fordyce and Steven Kaiser testified about a shooting incident they observed on January 12, 2005.  They were stopped in separate cars at a stop light on Somersville Road in Pittsburg, when they saw Daniels emerge from a white two-door American-made vehicle waiting for the light.  Both testified that they observed Daniels walk over to a brown-colored vehicle, produce a gun, and fire five to six shots, disintegrating the rear window.

3

When the brown car drove away, Daniels ran back to the white car, which quickly left the scene."

**The Petition For Resentencing and Proceedings Below**

On June 17, 2022, Daniels filed, through counsel, a two-page petition for resentencing under former section 1170.95, since renumbered as section 1172.6. The petition alleged that Daniels "was convicted of two counts of attempted murder on February 9, 2006[2] and sentenced to 56 years to life with possibility of parole. The information allowed the prosecution to proceed on a natural and probable consequences theory of attempted murder and/or a felony murder theory of murder." The petition further alleged that Daniels "was not the actual person who attempted to kill the victim," that he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual perpetrator in the commission of the attempted murder," and that he "was not a major participant in any underlying felony [and] did not act with reckless indifference to human life during the course of any underlying crime or felony."

On December 2, 2022, the trial court held a hearing on whether to issue an order to show cause on the petition. The court explained that "in considering the record of conviction, I am prepared to take judicial notice of and I have reviewed the following portions of this court's record of conviction in docket number 050450-6, that is the Information, the jury instruction, and the jury's verdict forms," and that it would consider our opinion on direct appeal "for no greater purpose than the procedural history" pursuant to section 1172.6, subdivision (d)(3). After the parties indicated they did not

---

[2] Daniels was convicted on October 3, 2005 and sentenced on February 9, 2006.

4

wish to add any argument to their written pleadings, the court concluded as follows:

"In this case, Mr. Daniels was charged in Count 1 with the attempted willful, deliberate and premeditated murder of Irving Griffin on January 12th, 2005, among other charges. And in Count 4 he was charged with the attempted, willful, deliberate and premeditated murder of Sean McClellan on December 17th, 2004.

"As to each of the attempted murder counts, Mr. Daniels was alleged to have personally used and intentionally and personally discharged a firearm and thereby proximately caused great bodily injury to Mr. Griffin in Count 1 and Mr. McClellan in Count 4, pursuant to Penal Code Section 12022.53(b), (c) and (d).

"Turning to the jury instructions, first, I did try the case. So I wrote the instructions and provided them to the jury. The jury was not at any time given an instruction on the natural and probable consequences doctrine. They were instructed on aiding and abetting in its simplest form, or direct form, but there were no instructions given that would permit them to address the natural and probable consequences doctrine.

"As to the attempted murder charges, the jury was instructed with CALJIC 8.66 as follows: 'Murder is the unlawful killing of a human being with malice aforethought. In order to prove attempted murder, each of the following elements must be proved:

" 'One, a direct but ineffectual act was done by one person toward killing another human being;

" 'Two, the person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being.'

5

"As to the allegation that the attempted murders were willful, deliberate and premeditated, I instructed the jury with CALJIC 8.67, which reads, in relevant part, as follows: 'If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill which was the result of deliberation and premeditation, it is attempted—it is attempt to commit willful, deliberate and premeditated murder.'"

"Another relevant paragraph, 'To constitute willful, deliberate and premeditated . . . attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequence, decides to kill and makes a direct but ineffectual act to kill another human being.'

"Turning to the jury's verdicts, on Count 1, the jury found Mr. [Daniels] guilty of the attempted murder of Irving Griffin on January 12th, 2005, and on Count 4, they found Mr. Daniels guilty of the attempted murder of Sean McClellan on December 17th, 2004.

"As to each of these convictions, the jury expressly found that the crime attempted was willful, deliberate and premeditated murder.

"The jury also expressly found that in committing each offense, Mr. Daniels personally used and discharged a handgun and proximately caused great bodily injury to Irving Griffin and Sean McClellan, respectively.

"So, therefore, based on the jury instructions that the jury received, they necessarily found as to each attempted murder count that Mr. Daniels acted with express malice, that is, a specific intent to kill each victim unlawfully.

"By their express finding, that—as to each of the attempted murder counts, the crime attempted was the willful, deliberate and premeditated murder. The jury necessarily found unanimously and beyond a reasonable

6

doubt that Mr. Daniels acted with a clear, deliberate intent to kill and that, after weighing the consequences, he decided to kill each of the respective victims.

"As I've noted, the jury could not have considered a theory of natural and probable consequences because no such instruction on that topic was given.

"As the Court of Appeals stated in People vs. Offley, O-F-F-L-E-Y, 48 Cal.App.5th, 588, Page 599, 'If the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted on that basis, and the petition should be summarily denied,' referring of course to a petition under 1170.95.

"So in light of the charges that were alleged, the jury instructions that were given, and the verdicts that were rendered, Mr. Daniels unquestionably could be convicted of attempted, willful, deliberate and premeditated murder on both Counts 1 and 4 based on the current law of attempted murder.

"So having considered the petitioner's petition to vacate his convictions and for resentencing together with the record of conviction that I've described, petitioner has not made out a prima facie case for relief under Section 1172.6(c). Therefore, I do decline to issue an order to show cause, and I'm denying Mr. Daniels' petition at this time."

Daniels filed a notice of appeal.

## DISCUSSION

### The Trial Court Was Right: There Was No Prima Facie Case For Relief

#### Applicable Law

In *People v. Coley* (2022) 77 Cal.App.5th 539 (*Coley*), our colleagues in Division Five gave the following summary of the applicable law:

7

"In 2018, several years after the convictions in this case, the Legislature passed Senate Bill No. 1437, Stats. 2018 (2017–2018 Reg. Sess.) ch. 1015 . . . which substantially modified the law relating to accomplice liability for murder. The amendment eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843) and significantly narrowed the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Lewis* [(2021)] 11 Cal.5th [952,] 957 (*Lewis*).)

"Among other things, section 188 was amended to provide, 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).) Senate Bill No. 1437 also limited the felony-murder rule to cases where the defendant was the actual killer, acted with an intent to kill, or acted as a 'major participant' in the underlying felony and with 'reckless indifference to human life' as those terms are used in the statute defining the felony-murder special circumstance. (§ 189, subd. (e).)

"Section 1170.95 was enacted as part of Senate Bill No. 1437 and provided a procedure whereby individuals convicted of felony murder or murder based on the natural and probable consequences doctrine could petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if they could not now be convicted of murder under the law as amended. The petition must contain (1) a declaration by the petitioner that he or she is eligible for relief; (2) the superior court case number and year of conviction; and (3) whether the petitioner requests counsel. If the petition states a prima facie showing of the defendant's entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1170.95, subds. (c) & (d)(1).)

8

"Courts of appeal were initially split as to when the appointment of counsel was required under section 1170.95. This split was resolved in *Lewis*, *supra*, 11 Cal.5th at p. 957, in which the Court concluded that if the section 1170.95 petition contains all the required information, including a declaration that the petitioner was convicted of murder and is eligible for relief, the court must appoint counsel to represent the petitioner if requested. (*Ibid*.) After the appointment of counsel and the opportunity for briefing, the superior court should consider whether the petitioner has made a prima facie showing of entitlement to relief, at which point the record of conviction may be considered. (§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at p. 957, 970–972.)

"In October 2021, the Governor signed Senate Bill No. 775, Stats. 2021 (2021–2022 Reg. Sess.) ch. 551, § 2, effective January 1, 2022. As relevant here, Senate Bill No. 775 amends subdivision (a) of section 1170.95 to allow persons convicted of "attempted murder under the natural and probable consequences doctrine" and manslaughter (in addition to those convicted of murder) to seek relief from their convictions, and further amends section 1170.95 to clarify that a person is entitled to an attorney upon the filing of a facially sufficient petition (thus memorializing the ruling in *Lewis*). (§ 1170.95, subds. (a) & (b)(3).)" (*Coley*, *supra*, 77 Cal.App.5th at pp. 543–544.)

In *Lewis*, *supra*, 11 Cal.5th 952, our Supreme Court explained that "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under section [1172.6], subdivision (c)." (*Lewis*, *supra*, 11 Cal.5th at p. 972.) And although "the prima facie inquiry under subdivision (c) is limited," (*Lewis*, at p. 971), " 'if the record, including the court's own documents,

"contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

**Analysis**

Daniels does not dispute the trial court's conclusion that he was ineligible for relief under section 1172.6 because the jury was not instructed on the natural and probable consequences theory of attempted murder. Rather, he argues that the jury's verdict and instructions were not properly entered into the record, suggesting that the trial court relied on its "recollection" of the instructions and verdicts rather than the documents themselves. We do not agree. The trial court clearly indicated it had reviewed and was taking judicial notice of the information, the jury instructions, and the verdicts, plainly had those documents before it, and read the relevant portions of the documents into the record.

In any event, while this appeal was pending, on October 10, 2023, we granted the Attorney General's unopposed request that we take judicial notice of the information, jury instructions, and the jury's verdict on appeal. (See Evid. Code, § 459, subd. (a) [reviewing court "shall take judicial notice of (1) each matter properly noticed by the trial court"]; Cal. Rules of Court, rule 8.252(a).) And whether the " 'record of conviction demonstrates that "the petitioner is ineligible for relief as a matter of law" . . . is a purely legal question, which we review de novo.' (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)" (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

Confirming the trial court's comments, the instructions show that the jury was not instructed on the natural and probable consequences theory of attempted murder, meaning the jury could not have convicted Daniels on that basis. (See, e.g., *People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review

10

granted Feb. 24, 2021, S266336, and dismissed Dec. 21, 2021 [because "no instructions were given on felony murder or murder under the natural and probable consequences doctrine," the petitioner was "ineligible for relief as a matter of law"]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sep. 23, 2020, S263939, and dismissed Nov. 17, 2021 [defendant "was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine" because "the jurors were not provided any instruction on which they could have found [him] guilty of murder under that doctrine"]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the [section 1172.6] petition should be summarily denied"].)

*Coley*, *supra*, 77 Cal.App.5th 539 is directly on point. There, the defendant was alleged to have been the driver of a vehicle from which his codefendant Peters fired shots at two victims, killing one. (*Id.* at p. 542.) The jury was instructed on direct aiding and abetting, but not on felony murder or the natural and probable consequences doctrine. (*Ibid.*) Coley was convicted of both second-degree murder and attempted murder without premeditation. (*Ibid.*) In concluding that Coley was ineligible as a matter of law for resentencing on the attempted murder conviction under section 1172.6, the court explained:

"Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine. (§ [1172.6], subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition"].) The jurors in this case were not instructed on that doctrine. They were given CALCRIM Nos. 400 and 401, on the theory of direct aiding and abetting, as well as CALCRIM

11

No. 600, which advised them that an attempted murder conviction required a finding that 'the defendants intended to kill [the victim].'  Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775.  (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 197.)  The court was not required to grant resentencing on this count." (*Coley, supra,* 77 Cal.App.5th at p. 548.)

Here, as in *Coley*, the jury was not instructed on the natural and probable consequences doctrine.  The attempted murder jury instruction required the jury to find that "the person committing the act harbored malice aforethought, namely, a specific intent to kill unlawfully another human being."  Even if the jury found Daniels guilty of attempted murder as a direct aider and abettor, the instructions required them to find that he had both "knowledge of the unlawful purpose of the perpetrator" and the "intent or purpose of committing or encouraging or facilitating the commission of the crime," i.e., intent to kill.  (CALJIC No. 3.01; see *People v. Lee* (2003) 31 Cal.4th 613, 623–624 [except under the natural and probable consequences doctrine, a "person guilty of attempted murder as an aider and abettor must intend to kill"].)  Under these circumstances, the record of conviction demonstrates that Daniels is ineligible for resentencing as a matter of law and the trial court did not err in denying his section 1172.6 petition at the prima facie stage.

## DISPOSITION

The order is affirmed.

_____

Richman, J.

We concur:

_____

Stewart, P. J.

_____

Miller, J.

*People v. Daniels* (A167096)