Filed 8/28/24  P. v. White CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEVIN WHITE,<br><br>    Defendant and Appellant. | B327885<br><br>(Los Angeles County<br>Super. Ct. No. TA133697) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Walton, Judge.  Affirmed with directions.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kevin White, who is serving a long prison term, appeals the denial of his petition to challenge those convictions pursuant to Penal Code section 1172.6.[1] We affirm. White's jury was not instructed on the natural and probable consequences doctrine when it convicted him of attempted murder, and he is thus ineligible for relief under the plain language of section 1172.6. Additionally, the record of conviction establishes the jury did not convict White under any theory of imputed malice. We also reject White's contention that the matter must be remanded for further proceedings under section 1172.1 but agree that the abstract of judgment must be corrected.

## BACKGROUND

**A. Trial**

We take the facts underlying White's conviction from our prior opinion affirming the judgment (*People v. White* (Jan. 23, 2017, B263887, B266107) [nonpub. opn.]), using them for purposes of context only. (See *People v. Vance* (2023) 94 Cal.App.5th 706, 713 [a factual summary in a prior appellate opinion is inadmissible to establish whether a defendant is eligible for resentencing relief].)

In 2014, White, a gang member, drove fellow gang member Alvin Johnson to the neighborhood of a rival gang. After passing a home where three people were gathered on a porch, White stopped the car and reversed it to a position from which Johnson fired 18 rounds from a firearm at the people on the porch. One was seriously wounded.

At trial, the jury was instructed with CALCRIM Nos. 104 ("Nothing that the attorneys say is evidence"); 400 (stating a

---

[1] Undesignated statutory references are to the Penal Code.

2

person may be guilty of a crime either by having "directly committed the crime" or by aiding and abetting a perpetrator who directly committed the crime); 401 (defining the elements of aiding and abetting liability); and 600 (stating attempted murder liability requires that the defendant intended to kill a person).

The jury was not instructed on the theory of natural and probable consequences, aiding and abetting, nor on any other theory of imputed malice.

The jury convicted White of shooting at an inhabited dwelling and three counts of premeditated, deliberate, and willful attempted murder, and found gang and firearm allegations to be true.

The court sentenced him to 96 years to life in prison, including three consecutive sentences of 25 years to life for the attempted murders and gang and firearm findings.

## B. Resentencing Pursuant to Section 1172.6

In 2022, White petitioned the superior court for resentencing pursuant to section 1172.6. On December 13, 2022, the trial court found he had established a prima facie case for relief and conducted an evidentiary hearing.

At the hearing, the court indicated that it had asked the prosecution to offer White a reduced sentence, and the prosecution did in fact offer to agree to a reduction of White's sentence to two consecutive 15-to-life terms. White countered with an offer to accept reduction to a determinate sentence of 33 years, which the People rejected. The trial court informed White that several post-conviction factors weighed in his favor such that

he would be well advised to accept the People's offer and anticipate early parole, but he refused.

The trial court denied White's petition on the ground he was ineligible for relief because the evidence presented at trial established he was a direct aider and abettor who acted willfully and deliberately.

The court stated, "The problem that Mr. White has in this case . . . is that he was the driver. It is absolutely impossible to commit a drive-by shooting without a driver. . . . It is possible that the driver may not have known the intent of the shooter, even in a drive-by shooting. However, under these facts, it is difficult for me to come to that conclusion. . . . As the evidence in reading the transcripts, Mr. White drives the car. He backs up the car to a position where the shooter has an opportunity to shoot directly upon the car. The shooter rolls down his window and speaks—and knowing that both defendants are gang members. The shooter rolls down the window and speaks before he shoots at the victim. And he says, 'What's up Blood,' while rolling down the window, which is an indication to Mr. White, if he didn't know what was about to occur, that is a direct indication that he knew a shooting was going to occur. He backs up the car. He positions it. . . . And then Mr. White, as the driver, sits there and allows his co-defendant to shoot off 18 rounds . . . . And it is interesting that it comes out that this all went down on the defendant's hood day, a celebration of their gang, that these events went down. That makes him a major participant. That makes his—based on this, I can't second-guess the jury—that he shared the intent of the shooter when you drive up, back up, put the shooter in a position, the shooter rolls down the window, has an opportunity to say 'what's up Blood' to the

victims, and then you sat there and allowed him to shoot 18 times. . . .  That is shared intent to kill.  That is the classic textbook, law school case of aiding and abetting . . . .  And based on those facts, you acted willfully and deliberately in the attempted murders. . . .  [B]ased on the facts that were presented, I can't second guess that. . . .  So based on all of that, the court finds that you are not entitled to re-sentencing, Mr. White."

White appeals from this denial of his section 1172.6 petition.

## C.    Resentencing Pursuant to Section 1172.1

Three weeks later, on January 3, 2023, the court on the People's motion conducted resentencing proceedings pursuant to section 1172.1, which allowed resentencing "at any time upon the recommendation of the . . . district attorney . . . ."  (§ 1172.1, subd. (a)(1).)

The district attorney recommended that the court strike all firearm findings and resentence White to 30 years to life, comprising two consecutive 15-years-to-life sentences for two counts of attempted murder with gang findings, plus a concurrent term of 15 years to life for the third attempted murder count and gang finding, plus a stayed life sentence for the conviction for shooting at an inhabited dwelling.

White offered to accept a sentence of 21 or 22 years to life, or of two concurrent 15-to-life terms, both of which the People rejected.

The court resentenced White in accordance with the People's recommendation.

As part of the resentencing agreement, White waived his "appeal rights and habeas petition rights pursuant to Assembly Bill 333 regarding the [criminal street gang] allegation pursuant

5

to [former] Penal Code section 1186.22 (b)(1)(C)(5)." He expressly preserved his right to appeal the denial of his section 1172.6 petition.

## DISCUSSION

### A. White is Ineligible for Relief Under Section 1172.6

White contends he is eligible for resentencing relief under section 1172.6. We disagree.

Section 1172.6 allows a defendant retroactively to seek resentencing for certain homicide offenses in light of changes enacted to the Penal Code. (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173.)

To qualify for relief, a petitioner must show, inter alia, "A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, *murder* under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or *attempted murder* under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1), italics added.)

For a petitioner convicted of attempted murder, this language affords relief only if the prosecution proceeded under the natural and probable consequences doctrine. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.) Where the prosecution proceeded under some other theory under which malice may be imputed based solely on the petitioner's participation in a crime,

6

relief is available only if the petitioner was convicted of murder, not attempted murder.

### 1. Section 1172.6 Does Not Apply to White's Convictions

Here, the parties confirmed to the resentencing court that White's jury was not instructed on the natural and probable consequences doctrine when it convicted him of attempted murder.  He is therefore ineligible for relief.  (*People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

White argues that the legislative history of section 1172.6 supports giving it a broader construction that extends to attempted murder convictions based on any theory which allowed malice to be imputed to the defendant.

Whether section 1172.6 extends to White's conviction is a question of statutory interpretation, which we review de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)  " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]  In determining that intent, we first examine the words of the respective statutes:  'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151 (*Coronado*).)  "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the

ostensible objects to be achieved and the legislative history." (*Ibid*.)

Under its plain language, section 1172.6 affords relief only to those convicted of murder, not attempted murder, if the prosecution proceeded on a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1); *Coley*, *supra*, 77 Cal.App.5th at p. 548.) White was convicted only of attempted murder. He is therefore ineligible for relief under section 1172.6.

Because the statutory language is clear, we may not consult its legislative history to identify an alternative construction. (*Coronado*, *supra*, 12 Cal.4th at p. 151.)

### 2. The Jury Did Not Convict on an Imputed Malice Theory

Assuming arguendo, despite its plain language, section 1172.6 applies more broadly to attempted murder convictions obtained under imputed malice theories other than the natural and probable consequences doctrine, White still fails to demonstrate any error. White contends that the prosecutor argued to the jury that as the driver of the car, he necessarily had to know the intended mission was to shoot the people on the porch, which "constructively conflated" White's intent to shoot at an inhabited dwelling with Jackson's *murderous* intent. White contends this constitutes an imputed malice theory.

Assuming this argument presents a theory of imputed malice, White fails to show the jury could have credited the argument and imputed malice to him.

At trial, the jury was instructed with CALCRIM No. 104, which stated that "[n]othing that the attorneys say is evidence," No. 401, which stated that to be "guilty of a crime based on aiding

8

and abetting *that* crime, the People must prove that . . . [¶] . . [¶] . . . [t]he defendant knew that the perpetrator intended to commit *the* crime . . . ." (italics added); and No. 600, which stated that attempted murder liability requires that the defendant intended to kill a person.

CALCRIM No. 401 further provided, "Someone aids and abets *a* crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of *that* crime." (Italics added.)

We presume a jury understands and follows the court's instructions, and " 'treat[s] the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate . . . .' " (*People v. Cortez* (2016) 63 Cal.4th 101, 131.)

CALCRIM No. 401 leaves no room for a jury to impute an aider and abettor's malice as to one crime (murder) based on his participation in a different crime (shooting at an inhabited dwelling).

In the case of attempted murder, the perpetrator's "unlawful purpose" must be to kill someone. (See *People v. Lee* (2003) 31 Cal.4th 613, 623 [attempted murder requires specific intent to kill].) Under CALCRIM No. 401, combined with CALCRIM No. 600, the jury could not have convicted White as an aider and abettor without finding he knew his accomplice intended to kill someone and intended to aid, facilitate, promote, encourage, or instigate that killing—that is, that White also intended to kill.

Nothing in the charges, the instructions, or the balance of the trial permitted the jury to find White guilty on a theory other

9

than direct aiding and abetting an attempted murder. And there is no indication in the record to suggest, and White does not contend, that the jury did not, in fact, follow the court's instructions. (See *People v. Johnson* (2015) 61 Cal.4th 734, 770 [where nothing in the record suggested that the jury did not follow court's instructions, presumption that the jury followed instructions is not overcome].)

In short, White was not eligible for relief under section 1172.6 as a matter of law.

Given this holding, we need not reach White's argument that the trial court failed to act as an independent factfinder (by stating it could "not second-guess the jury") nor his implied argument that the court's ruling was unsupported by substantial evidence.

We reject White's argument that the court abrogated its role as an independent factfinder when it stated it could not "second-guess" the jury. The court stated, *"based on this* [i.e., the trial evidence], I can't second-guess the jury." (Italics added.) The court's qualifier referencing the evidence indicated it was acting as an independent factfinder.

## B. The Section 1172.1 Proceedings Require No Remand

White contends that changes made to section 1172.1 effective January 2, 2024, "afford[] the court greater discretion in fashioning a reduced sentence," which requires remand for further resentencing proceedings under that section. We disagree.

### 1. Changes to Section 1172.1 After White's Resentencing Hearing

Prior to the January 3, 2023 section 1172.1 hearing, former section 1170, subdivision (d)(1) authorized the district attorney to

recommend to the superior court that the court recall a previously imposed sentence and resentence the defendant. This recommendation furnished the court with jurisdiction it otherwise would not have to recall and resentence, and was " ' "an invitation to the court to exercise its equitable jurisdiction." ' " (*People v. Braggs* (2022) 85 Cal.App.5th 809, 817 (*Braggs*).) At that time the court had no jurisdiction to initiate a recall and resentencing proceeding.

Effective January 1 and June 30, 2022, former section 1170, subdivision (d) was moved to new section 1170.03, then renumbered to former section 1172.1. (Stats. 2021, ch. 719, §§ 1-7; *Braggs*, *supra*, 85 Cal.App.5th at p. 818.)

As pertinent here, former section 1172.1 provided:

"The resentencing court may, in the interest of justice . . . [¶] . . . Reduce a defendant's term of imprisonment by modifying the sentence [or] [¶] . . . . *Vacate the defendant's conviction* and impose judgment on any necessarily included lesser offense or lesser related offense . . . and then resentence the defendant to a reduced term of imprisonment, *with the concurrence of both the defendant and the district attorney . . . .*" (Former § 1172.1, subd. (a)(3), italics added.)

Approximately one-year after White's resentencing hearing, Assembly Bill No. 600 (Stats. 2023, ch. 446, § 2) amended section 1172.1 to:

(1) Allow a trial court, on its own motion, to recall a sentence and resentence a defendant when "applicable sentencing laws at the time of the original sentencing are subsequently

11

changed by new statutory authority or case law" (§ 1172.1, subd. (a)(1));

(2) Allow a trial court to *"[v]acate the defendant's conviction* and impose judgment on any necessarily included lesser offense or lesser related offense . . . *with the concurrence of the defendant*, and then resentence the defendant to a reduced term of imprisonment" (§ 1172.1, subd. (a)(3)(B)); and

(3) Require (rather than permit) a trial court to consider specified postconviction factors in recalling a sentence and resentencing the defendant (§ 1172.1, subd. (a)(5)).

**2. White has Either Fully or Partially Waived Appeal on this Ground**

**a. White Waived any Appeal from the Court's Section 1172.1 Order**

Preliminarily, we note that White never appealed from the court's ruling on the People's section 1172.1 petition. On that ground alone, his appeal is waived.

**b. White Waived any Challenge to the Gang Enhancement Portion of the 1172.1 Order**

Even if White had appealed the court's 1172.1 ruling, in the court's section 1172.1 proceedings, in which his sentence was reduced from 96 to 30 years to life, largely due to modification of the gang enhancements, he waived any right to appeal the gang enhancement portion of the court's order.

"In 2021, the Legislature passed Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333), known as the STEP Forward Act of 2021. (Stats. 2021, ch. 699, § 1.) Assembly Bill 333 amended Penal Code section 186.22 by imposing new substantive requirements relating to gang enhancements and the

12

criminal offense of gang participation. [Fn.] (Stats. 2021, ch. 699, § 4.)." (*People v. Burgos* (2024) 16 Cal.5th 1, 7.)

In the section 1172.1 proceedings, White waived his "appeal rights and habeas petition rights pursuant to Assembly Bill 333 regarding the [criminal street gang] allegation pursuant to [former] Penal Code section 1186.22 (b)(1)(C)(5)."

Therefore, to the extent White appeals the trial court's ruling in the section 1172.1 proceedings, he waived any such appeal as to the effect any changes in gang enhancements would have on his sentence.

In sum, White either fully waived his right to appeal the court's section 1172.1 order (by appealing only from the section 1172.6 order) or waived his appeal insofar as the 1172.1 order adjusted the gang enhancement portion of his sentence.

### 3. Remand is Not Appropriate

White's appeal from the court's section 1172.1 order fails on its merits, as well.

White argues that remand is necessary to afford the trial court an opportunity to exercise the enhanced resentencing discretion provided in the 2024 amendments to section 1172.1. We disagree.

First, proceedings under section 1172.1 are appropriate only where "applicable sentencing laws at the time of the original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1).) White identifies no change in the sentencing laws that would permit a trial court on its own motion to recall and further reduce his sentence.

Second, even if he did identify such a change, White does not contend the court erred in any respect. He contends only that the latest amendment to section 1172.1 conferred expanded

13

discretion for the court to resentence him without "the prosecution's ratification of the sentencing," and the court should be given an opportunity to exercise this newfound discretion.

White misreads section 1172.1, which has always permitted the trial court to reduce a sentence without the district attorney's concurrence.

Former section 1172.1 provided that the trial court could either "[r]educe a defendant's term of imprisonment by modifying the sentence" or "[v]acate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense . . . and then resentence the defendant to a reduced term of imprisonment, with the concurrence of both the defendant and the district attorney."  (Former § 1172.1, subd. (a)(3).)

Although the court's discretion to vacate a conviction was subject to the district attorney's concurrence, its discretion to reduce a sentence was not.

The 2024 amendment to section 1172.1 allowed a trial court to "[v]acate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense . . . with the concurrence of the defendant, and then resentence the defendant to a reduced term of imprisonment." (§ 1172.1, subd. (a)(3)(B).)  But this amendment expanded the court's discretion only to vacate a defendant's conviction; it left intact its unfettered discretion to reduce a sentence.

Thus, at the section 1172.1 proceedings on January 3, 2023, the court already enjoyed the discretion to reduce White's

14

sentence beyond that to which the district attorney had agreed. It elected not to do so. Remand is therefore unnecessary.

For these reasons, the court's section 1172.1 order is affirmed.

**C.     The Abstract of Judgment Must be Corrected**

The trial court recalculated White's presentence credits to award 329 days of actual credit plus 49 days of conduct credits as part of his original sentence, and then noted he had earned an additional 2,806 days of actual credit since the original sentence.

White argues that the abstract of judgment does not reflect those additional credits. Respondent concedes the point, and we agree. Therefore, we will direct the court to correct the abstract. (*People v. Mitchell* (2001) 26 Cal.4th 181, 188.)

**DISPOSITION**

The order is affirmed. The trial court is directed to conform the abstract of judgment to its ruling from the bench and forward a copy of the corrected abstract to the CDCR.

NOT TO BE PUBLISHED

KELLEY, J.*

We concur:

ROTHSCHILD, P. J.                    WEINGART, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.