Filed 12/17/15  P. v. Leyva CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANNY LEYVA,<br><br>    Defendant and Appellant. | 2d Crim. No. B257370<br>(Super. Ct. No. F489039)<br>(San Luis Obispo County) |

Danny Leyva appeals from the judgment following his conviction by jury of attempted murder (Pen. Code, §§ 664, 187) and assault with a deadly weapon by a prisoner (§ 4501).[1]  The jury acquitted him of aggravated mayhem (§ 205) and found untrue allegations that he personally inflicted great bodily injury upon the victim of the attempted murder and assault.  (§ 12022.7, subd. (a).)  In a bifurcated proceeding the trial court found that appellant suffered a prior serious felony conviction and a prior felony strike.  (§§ 667, subds. (a), (d), (e), 1170.12, subds. (b), (c).)  The court sentenced him to a 23-year prison term.  Appellant contends there is insufficient evidence to support his convictions.  We affirm.

---

[1] All statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of September 30, 2012, Officer Todd Rodin saw inmate Antwaren Roberts "fly" out of his cell and "fall on his back." His face was covered with blood. Appellant and Arbi Kamali, who were assigned to another cell, crawled from Roberts's cell. Both were "covered in blood."[2] Rodin ordered Kamali and appellant to the ground. They complied.

Rodin saw blood all over Roberts's cell floor and grew concerned about the welfare of Roberts's cellmate, Golden. Rodin located Golden, who had no injuries, in another room. Meanwhile, other officers saw Kamali and appellant outside the shower area. Both were "wet," and no longer had blood on their skin. Something that resembled blood was on the shower curtain. The shorts that appellant wore, and the inner portion of his right shoe, had blood spots.

Officer Edward Nixon examined Roberts's cell and found two "inmate-manufactured weapons" in the toilet. One was a "slashing" weapon constructed from a Bic razor, tape and cloth. The other was a "stabbing" weapon constructed from the metal portion of a mop handle and white "T-shirt type" fabric. Sergeant Daniel Soto searched the cell that appellant and Kamali shared and found a piece of cloth and a roll of tape under a bed. The width and material of the cloth were similar to the cloth on the stabbing weapon. The loose ends of the tape on the roll and the stabbing weapon appeared to match.

Roberts was treated at an emergency hospital. He had nine stab or puncture wounds, including two in his left torso, two in his back and neck area, and one under his left armpit. He also had three "slash" wounds, including a two- and a half-inch long wound on his left cheek and a half-inch long wound on his lower chin.

---

[2] The prosecution jointly charged appellant and Kamali. Before trial, Kamali pled no contest to attempted murder, and admitted the great bodily injury enhancement and a prior strike conviction.

2

DISCUSSION

Appellant contends that the evidence is insufficient to sustain his attempted murder and assault with deadly weapon convictions. We conclude otherwise.

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

The conviction for attempted murder required proof that appellant intended to kill Roberts and took a direct but ineffectual act toward accomplishing the killing (*People v. Smith* (2005) 37 Cal.4th 733, 739) or, under an aiding and abetting theory, proof that he gave aid or encouragement to the perpetrator with knowledge of his intent to kill Roberts and with the purpose of facilitating accomplishment of the intended killing. (*People v. Lee* (2003) 31 Cal.4th 613, 624.) The "intent to kill . . ., the mental state required to convict a defendant of attempted murder may . . . be inferred from the defendant's acts and the circumstances of the crime. [Citation.] '. . . Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions.' [Citation.]" (*People v. Smith*, *supra*, at p. 741.)

In challenging the sufficiency of the evidence, appellant stresses that the jury found he did not personally inflict great bodily injury on Roberts. "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of the verdict. [Citation.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 656.) Even if it concluded he did not directly attack Roberts, the jury could find that appellant

3

aided and abetted the perpetrator. Appellant crawled from Roberts's blood-covered cell, on his hands and knees, covered in blood, immediately after the attack, with Kamali, the only other possible perpetrator. The number, location and nature of Roberts's injuries support the inference that his attackers intended to kill him. (*People v. Osband* (1996) 13 Cal.4th 622, 692.) Despite their quick flight to the shower, appellant and Kamali failed to eliminate the blood stains which linked them to the attack. Substantial evidence supports the attempted murder under an aiding and abetting theory.

The "[e]vidence is sufficient to prove a conspiracy to commit a crime 'if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime. [Citation.] The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1135.) The same evidence that supports the finding that appellant acted as an aider and abettor also supports the finding that he conspired with Kamali.

Appellant's challenge to the assault conviction fails for the same reasons that his challenge to the attempted murder fails.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

4

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi, Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.