Filed 2/18/26  P. v. Salinas CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GILBERTO SALINAS, et al.,<br><br>    Defendants and Appellants. | B341570<br><br>Los Angeles County<br>Super. Ct. No. TA128998 |

APPEAL from orders of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Reversed and remanded with instructions.

Jennifer Peabody and Keilana Truong, under appointment by the Court of Appeal, for Defendant and Appellant Raul Garay.

Jonathan Demson and Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant Gilberto Salinas.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Pursuant to a plea bargain, Raul Garay and Gilberto Salinas pleaded no contest to voluntary manslaughter and one count of attempted murder. Both petitioned the court for resentencing pursuant to section 1172.6. The court denied each man's petition. We affirm the trial court's denial of the petitions as to the attempted murder charges. We reverse and remand for the trial court to hold another evidentiary hearing pursuant to section 1172.6, subdivision (d)(3) to determine whether Garay and Salinas would be guilty of murder beyond a reasonable doubt under current law. Code citations are to the Penal Code.

I

We begin with the pertinent factual and procedural background.

Garay and Salinas both told police they were members of the Hangout Boys gang. The Hangout Boys and Playboys are rivals.

Enrique Cardozo is a member of the Playboys criminal gang. His sister's boyfriend, Javier Garcia, is also a member of the Playboys gang. His friend Rodolfo Alarcon is also a member.

Garay, Salinas, Cardozo, Alarcon, and Garcia all attended a large baptismal party one evening. While dancing, a woman made a hand sign that represented the Hangout Boys. Shortly after, Alarcon got into a fistfight with a member of the Hangout Boys group toward the back of the party. When a crowd went toward the fight, it broke up.

Garay had the following text message conversation with a contact labeled "LT" in his cell phone:

2

"GARAY:  This shit is popping my boy.

"GARAY:  Are you coming?

"LT:  Give me the address.

"GARAY:  640 West Hoover [additional directions]

"GARAY:  Bring the toy, we might need it my boy.

"GARAY:  I think we have some peanuts.

"GARAY:  Make that some dead bunnies.

"GARAY:  Hey, where are you at?  We need that.

"LT:   I'm on my way, I got you vatos."

A gang expert testified that "toy" meant gun.  "Peanuts" was a derogatory term for members of the Playboy gang.  "Dead bunnies" likewise referred to Playboys and suggested a need to eliminate rivals.  While the address was not the exact location of the party, it was close, and the directions provided led to the party.  This exchange began before the first fight.

A Hangout Boys member by the moniker True brought the gun.  Salinas took the gun because it was his "actions to take at the party."

Cardozo and Garcia decided to leave after the first fight.  The rest of their party was still gathering their things when the two headed to the exit.

When Cardozo and Garcia reached the gate, a second fight broke out.  Cardozo was fighting with someone, but then saw Salinas with a gun.  He then tried to get the gun from Salinas.  While he struggled for the gun, Garay stabbed Cardozo twice in the back with a knife.  Cardozo dropped the gun and tried to run away but collapsed not long after.  He then heard gunshots.

After Salinas lost control of the gun, he shouted, "Smoke 'em!"

True picked up the gun and began shooting. The bullets killed Alarcon and injured four other individuals, including Garcia and Cardozo's sister.

Police received reports of gunshots and began driving toward the address of the party. Officer William Niemeyer saw Garay walking by himself away from the address talking on his cell phone. As Niemeyer opened his car door, Garay threw something he was holding in a bush and began to run. Officers caught Garay and retrieved a phone from the bush. The phone showed the text conversation reflected above.

After police arrested Salinas, they put him in a cell with an undercover agent pursuant to *Illinois v. Perkins* (1990) 496 U.S. 292. The police recorded the conversation Salinas had with the agent. Salinas told the agent that at their request a fellow gang member, True, brought a gun to the party. Salinas said True had given the gun to him because it was Salinas's "action." But after Salinas lost control of the gun, True had used it.

An information charged Garay and Salinas with murder and four counts of attempted murder, with firearm and gang enhancements. Pursuant to a plea bargain, each pleaded no contest to one count of voluntary manslaughter and one count of attempted murder.

Garay and Salinas each filed a petition for resentencing. The prosecutor stipulated Garay had made a prima facie showing of eligibility for relief, and the court found Salinas had as well.

The trial court therefore set an evidentiary hearing under section 1172.6, subdivision (d)(3). Neither side submitted new evidence. The parties and the court relied on the transcript from the preliminary hearing.

After hearing argument, the court stated, "Mr. Garay and Mr. Salinas – and I find it beyond a reasonable doubt – would be convicted of the crimes for which they pled to. [¶] And I think that is significant because they pled to manslaughters. It was a fight and a mele[e], and I do believe one count of attempted murder as to the actual victims." After summarizing the evidence, the court again stated, "I find beyond a reasonable doubt that Mr. Garay and Mr. Salinas would have been convicted for the crimes that they pled to prior to trial without a trial. And they would have been convicted on a theory of aiding and abetting the murders and the attempted murders that occurred on that evening." The minute order from the hearing reflected: "The Court finds beyond a reasonable doubt that the defendant is liable, based on aiding and abetting, for the crimes which he pled to."

Garay and Salinas appeal the denials of their petitions.

II

Both Garay and Salinas argue the trial court erred in denying their petitions for resentencing on their manslaughter charges because it found they could still be found guilty of manslaughter, not murder. We agree and reverse for the trial court to hold another evidentiary hearing to consider the issue. Garay alone also argues substantial evidence did not support the trial court's finding that he could be convicted of attempted murder under current law. We disagree and affirm this part of the trial court's ruling.

A

In 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which altered the rules

5

of murder liability to ensure culpability more closely matched punishment.  (*People v. Arellano* (2024) 16 Cal.5th 457, 472.)

To provide retroactive relief, Senate Bill 1437 also established a resentencing process, now codified in section 1172.6.  This statute permits individuals convicted of murder, attempted murder, or manslaughter under a theory made invalid by the current law to petition the sentencing court to vacate the conviction and seek resentencing.  (§ 1172.6, subd. (a)(1).)  Petitioners can seek such relief whether their convictions are the result of a trial or acceptance of a plea offer in lieu of a trial.  (§ 1172.6, subd. (a)(2).)

If petitioners make a prima facie showing of eligibility for relief, the trial court holds an evidentiary hearing.  (§ 1172.6, subd. (d)(3).)  At the evidentiary hearing, the trial court sits as the trier of fact and determines whether the petitioner could be found guilty of murder or attempted murder under current law.  (§ 1172.6, subd. (d)(3).)  We review the court's finding for substantial evidence, making all inferences in favor of the judgment.  (*People v. Schell* (2022) 84 Cal.App.5th 437, 442.)

B

We turn first to the argument that the trial court applied the wrong standard in denying the petitions for resentencing on Garay's and Salinas's manslaughter convictions.

Three times the court stated Garay and Salinas could be convicted of the crime to which they pleaded.  In one instance, the court noted it was "significant" the crime they had pleaded to was manslaughter.  However, that is not the question the court must answer.  The evidentiary hearing under section 1172.6, subdivision (d)(3), requires the court to determine whether the

6

petitioner could be convicted of *murder or attempted murder* under current law – not manslaughter.  (§ 1172.6, subd. (d)(3).)

The court made one statement that Garay and Salinas would have been convicted of aiding and abetting the murders and attempted murders.  And the court's analysis of the evidence seems to comport with a determination of whether the evidence supports a finding of murder or attempted murder beyond a reasonable doubt.  While this final statement appears to answer the correct question, we cannot ignore that it is one of the four statements addressed to this point.  On this record, we cannot confidently find the trial court meant to find the two men could be found guilty of murder and not manslaughter under current law.  We therefore remand for the court to hold an evidentiary hearing and answer the required question under section 1172.6, subdivision (d)(3) with regard to Garay's and Salina's manslaughter convictions.

C

Garay incorrectly argues substantial evidence did not support the trial court's finding that he could be convicted of attempted murder under current law.

To be guilty of aiding and abetting attempted murder, a person must provide aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the intent of facilitating the direct perpetrator's accomplishment of the intended killing.  (*People v. Lee* (2003) 31 Cal.4th 613, 624.)  Direct evidence of intent to kill is rare.  Normally, we must infer the intent to kill from the statements and actions of the aider in light of the circumstances of the crime.  (*People v. Canizales* (2019) 7 Cal.5th 591, 602.)  Relevant considerations include presence at the scene and failure to prevent the crime, companionship, conduct before

7

and after the offense, and flight. (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.)

Here, Garay texted a fellow gang member to ask him to bring a gun to the event. He also indicated a desire to make "some dead bunnies." Garay remained at the event and participated in the gang fight. When rival gang member Cardozo tried to take the gun from Salinas, Garay stabbed Cardozo twice in the back with a knife, allowing his gang to regain possession of the gun. Thus, not only did Garay fail to prevent the crime, he took steps to ensure his gang could commit the intended murders.

After the shooting, when police approached Garay, he attempted to run away and threw away the phone with the incriminating text messages. While this conduct alone cannot show intent, it can provide corroborative evidence of a guilty mind.

Considered together, Garay's actions are sufficient to show he intended to aid his fellow gang members in killing rival gang members during the gang fight.

## DISPOSITION

We affirm the trial court's denial of Garay's and Salinas's petition for resentencing on their respective attempted murder convictions. We reverse and remand for the trial court to apply the correct standard for an evidentiary hearing under subdivision (d)(3) of section 1172.6 with regard to Garay's and Salinas's manslaughter convictions.


WILEY, J.

We concur:


STRATTON, P. J.         SCHERB, J.

8